[No. 17858.   Department Two.   October 11, 1923.]

# L. E. JESSEPH et al., Respondents, v. DORR H. CARROLL et al., Defendants, G. B. IDE, as Receiver, Appellant.[1]

TRUSTS (35)—POWERS OF TRUSTEE—EXECUTION OF MORTGAGE. Where a common . law trust vested general management in the trustees, who were authorized to delegate powers to another, they may delegate to a single trustee the power to borrow money and execute a chattel mortgage.

SAME (35)—POWERS OF TRUSTEE—DELEGATION OF POWERS—EXECUTION OF MORTGAGE. Where a trustee has power to borrow money and execute a chattel mortgage, he may, after arranging the loan and executing the note, delegate to an attorney-in-fact the execution of the mortgage, since it is only a ministerial act, involving no exercise of discretion.

CHATTEL MORTGAGES (18)—VALIDITY—AFFIDAVIT OF GOOD FAITH—ATTORNEY IN FACT—AUTHORITY. A chattel mortgage executed by an attorney-in-fact, who made the affidavit of good faith, complies with Rem. Comp. Stat., § 3780, requiring "an affidavit of the mortgagor" that it was made in good faith.

PROCESS (25)—SERVICE BY PUBLICATION—AFFIDAVIT—SUFFICIENCY. An affidavit for the publication of a summons is sufficient if it clearly shows all the conditions required, although it does not literally follow the wording of the statute.

SAME (48)—SERVICE BY PUBLICATION—WAIVER OF DEFECTS. Defects in an affidavit for service by publication are waived where defendants appeared by serving a demurrer and answer, after which notice of trial was served upon them.

CHATTEL MORTGAGES (58)—SATISFACTION AND PAYMENT—EVIDENCE—SUFFICIENCY. An advancement by a married woman of $5,000 to an association to relieve it of its difficulties, out of which her husband purchased and took an assignment of a note and chattel mortgage intending to hold it as security for repayment of the advances, is not a payment of the note and mortgage.

SAME (77)—FORECLOSURE—SALE—COLLUSION AND FRAUD—EVIDENCE—SUFFICIENCY. There is no abuse of discretion in refusing to set aside a chattel mortgage foreclosure sale for inadequacy of price, where the property brought $2,670, subject to liens for $3,600,

[1]Reported in 219 Pac. 429.

witnesses valued it at $12,000 to $15,000, and the purchaser valued it at the price bid, and the sale was attended by other contemplative bidders and delayed to give opportunity to investigate the title and no higher bids were made.

Appeal from a judgment of the superior court for Stevens county, Oswald, J., entered October 19, 1922, dismissing an action to vacate a chattel mortgage foreclosure sale, tried to the court. Affirmed.

*W. W. Zent* and *W. Lon Johnson,* for appellant.

*L. B. Donley* and *McWilliams & Orr,* for respondents.

FULLERTON, J.—This is a proceeding brought by the receiver of an association called the Home Lumber Company of Washington, for the purpose of setting aside a sale had on the foreclosure of a chattel mortgage and for the recovery of the property sold thereunder. The trial resulted in a judgment denying relief, and the receiver appeals.

The individuals forming the association undertook to organize as a common law trust. They named certain of their members as trustees, and caused to be conveyed to them certain real and personal property, full control and management of which was vested in them. Among the enumerated powers vested in the trustees was the power to borrow money and pledge the property of the association as security therefor. It was provided in the articles of trust that the power of the trustees should be exercised by them jointly, "unless the general power shall at any time be delegated to any one particular individual member or members, in writing."

At a regular annual meeting of the association, held on January 7, 1920, the general management of the company was vested in one Dorr H. Carroll, a member

of the board of trustees. Among the powers specially granted him was the power to borrow money and execute chattel mortgages as security therefor. Prior to this meeting, the association had purchased a sawmill and had obligated itself for a considerable sum of money. A part of this was met by the sale of certain of its timber holdings, and for another part a postdated check for two thousand dollars was given. This check was, at the date of the annual meeting mentioned, due or about to become due. To meet its payment the association borrowed the money from the First National Bank of Colville, executing to the bank its promissory note for that sum, payable in sixty days, and securing it by the chattel mortgage here in question. The mortgage, however, was not executed personally by Carroll. He was in the state of North Dakota at that time, and in that state executed the note and forwarded it to the attorney of the association at Colville, Washington, authorizing him to execute the mortgage on behalf of the association. The form of the authorization is not in the record. The attorney, however, speaks of it as a power of attorney, and he executed the mortgage as the attorney in fact of Carroll.

The note was not paid at its maturity. The bank holding it threatened foreclosure, and it was taken up by one Bloom, a trustee of the association, who took an assignment of the note and mortgage. Bloom subsequently assigned the note and mortgage to L. E. Jesseph, the plaintiff in the mortgage foreclosure action.

The first contention of the appellant is that the entire proceedings had in the mortgage foreclosure action are invalid because of the invalidity of the chattel mortgage. The mortgage is claimed to be void because of the manner of its execution. It is contended

that even the purported representative of the trust could not, under the articles of trust, alone execute it, and contended further that, if he had the power, he could not delegate it to another. But we think the quotation made from the articles is a sufficient answer to the first objection. While the general power to act on behalf of the association was vested in the trustees as a body, it was specially provided that the power might be vested in one of them individually by the others, and there was here such a vesting.

As to the second objection, the general rule undoubtedly is that a trustee vested with a power which involves personal discretion and judgment cannot delegate the execution of the power to another. But the rule extends only to the delegation of the personal discretion and judgment; it does not extend to the means by which the discretion is carried into execution. As is said by Mr. Perry in his work on Trusts and Trustees, vol. 1, § 409 (6th ed.):

"But it must be observed that the appointment of an attorney, proxy, or agent is not necessarily a delegation of the trust. The trustee must act at times through attorneys or agents, and if he determines in his own mind how to exercise the discretion, and appoints agents or instruments to carry out his determination, he cannot be said to delegate the trust, even though deeds or other instruments are signed by attorneys in his name. So, if he gives instructions to his attorneys and agents how to act, it cannot be said to be a delegation of the trust."

The record discloses that the trustee in this instance arranged for the loan and the manner in which it was to be executed, and executed the note required as evidence thereof, delegating to the attorney only the ministerial power of executing the mortgage agreed to be executed as security. This was not the delegation of

any part of the trust within the meaning of the rule relied upon.

The statute provides that a mortgage of personal property shall be void as against all creditors of the mortgagor, both existing and subsequent, "unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay or defraud creditors . . ." (Rem. Comp. Stat., § 3780) [P. C. § 9747]. The affidavit to the mortgage in this instance was made by the attorney in fact who executed the mortgage, and it is argued that this is such a non-compliance with the statute as to render the mortgage void. But we cannot so conclude. Conveyances executed under a power of attorney are generally recognized as valid, although the procedure may not be specially authorized by statute. The fundamental maxim of agency, roughly anglicized as, "Whatever a man may do himself he may do through an agent," is all but universal. While there are exceptions, the execution of ordinary instruments of conveyance is not within them. If this were not so, associations of persons, corporations, and the like, which must necessarily act through agents, could not execute an instrument of conveyance. The industry of counsel has not brought to our attention any case precisely in point, but analogous cases are numerous. The statutes in many of the states, as does ours, require a deed to be signed "by the party bound thereby," and to be "acknowledged by the party making it," yet it is held that the requirements are not so far personal as to prevent the owners of property to authorize an agent to execute an instrument of conveyance. The requirement that a chattel mortgage shall be accompanied by the oath of the mortgagor is no more personal than is the requirement that a deed shall be signed by the

party to be bound, and the same principle that permits a deed to be signed and acknowledged by an authorized agent permits the affidavit to a chattel mortgage to be made by an authorized agent.

The service of the summons in the foreclosure proceeding was had by publication, and it is claimed that this is insufficient. The fault is found in the affidavit on which the publication is based. But, while the affidavit does not literally follow the wording of the statute, it clearly shows all of the conditions to be present which the statute requires as conditions precedent to a service by publication. If the jurisdiction of the court over the persons of the defendants rested on this service, we would deem it sufficient. But it does not so rest. The defendants gave notice of their appearance in the action by serving a demurrer and an answer to the complaint. These papers were not filed, but they constitute an appearance under § 241, Rem. Comp. Stat. [P. C. § 8451]. After these services, notice of the time and place of trial was duly served on the attorney appearing for the defendants, and we think this gave the court jurisdiction to proceed against the defendants, even if it were conceded that the original service was defective. .

A further contention is that the mortgage was actually paid prior to its foreclosure. The facts upon which this contention is based are somewhat complicated, but it seems that, at the time the mortgagee named in the chattel mortgage was threatening foreclosure, the association was having other financial difficulties, and that Mrs. Bloom, the wife of J. H. Bloom, agreed to and did advance some $5,000, to be expended by her husband in relieving the situation. Out of this money J. H. Bloom purchased and took an assignment of the note and mortgage, intending to hold it as secur-

ity for the advancement made by his wife. The argument is that the advancement was a loan to the association, that the money was the association's money, and that, in consequence, the transaction was a payment of the note and mortgage and not a purchase. But we think the evidence very clearly shows that no loan was intended. While it may be that a part of the money was paid in satisfaction of certain obligations of the company, the money did not otherwise reach the association. Nor did Mrs. Bloom exact, nor did the association give her, any obligation on account of the advancement. The advancement was doubtless made in the belief that the association would thus be enabled to continue its business and subsequently take up the mortgage and repay the moneys paid to its use. But we cannot conclude that this requires the holding that the money paid for the mortgage was the money of the association.

It is next claimed that the entire foreclosure proceeding was collusive and calculated to defraud the association and its creditors. But we find little foundation for this claim. It is true that the parties interested were closely connected with the association, but the transactions leading up to the purchase of the mortgage on behalf of Mrs. Bloom were in no way concealed. More than this, the proceedings had in foreclosure of the mortgage were openly conducted, and the evidence is clear that all of the parties adversely interested had actual notice of the proceedings, and ample opportunity to make a defense thereto had they so desired. There is no claim of newly discovered evidence, and, since all of the facts now thought sufficient to set aside the decree were known while the proceedings resulting in the decree were pending, the place to make the contest was in that proceeding. The

courts are loath to listen to a claim of collusion not asserted when the first opportunity to assert it is offered.

Finally, it is claimed that the sale of the property should be set aside because of inadequacy of price. Whether a trial court will or will not set aside a sale for inadequacy of price is largely a matter within its discretion, and had the trial court in this instance set aside the sale and ordered a resale, we are free to say that we would not have disturbed its order. But the question before an appellate court is always, did the trial court abuse its discretion, an inquiry more confined than it would be were it an original one. The mortgaged property sold at the sale for $2,670, subject to liens aggregating some $3,600. The appellant produced witnesses who testified that it was worth at that time from $35,000 to $38,000. But we think these gross exaggerations. The property was purchased with a body of timber land at an original cost to the association of only $30,000, and it subsequently sold about one-half of the timber land for a cash price of $10,000. Other witnesses, who we think were worthy of credence, valued the property at from $12,000 to $15,000, and the purchaser at the sale, who was in no way connected with the foreclosure proceedings, valued it at no more than the price bid, plus the liens. There were a number of persons at the sale who were interested in such property, attracted there because of the opportunity to purchase it. None of these saw fit to outbid the actual purchaser. This alone is some evidence that the price bid was not grossly disproportionate to the value of the property. But it is said that bidding was discouraged by the action of the attorney representing the mortgagee at the sale. Counsel in their brief inquire: "Why should he be interested in dis-

couraging bidders? Why should he announce boisterously that the property was heavily encumbered?" But the record is by no means convincing that the attorney was guilty of the conduct implied by the questions. It is true that, when inquiry was made of him concerning the title, he told of the liens, stated their amounts, stated that he was representing the lien claimants, and gave it as his opinion that they were valid and superior to the mortgage lien. We can find nothing unseemly in this. Indeed, we think his conduct would have been reprehensible had he done otherwise. More than this, at the request of some of the contemplative bidders, he caused the sale to be delayed for some time, in order that they might make independent inquiries as to the title to the property, and started the sale only after they informed him that they had completed their inquiries. We, therefore, see no cause to disturb the order of the trial court refusing to set aside the sale.

The judgment of the trial court is affirmed.

MAIN, C. J., PARKER, TOLMAN, and PEMBERTON, JJ., concur.