[No. 33125. Department Two. August 4, 1955.]

THE STATE OF WASHINGTON, *on the Relation of Tacoma Boys' Club et al., Respondents,* v. THE SALVATION ARMY, *Appellant.*[1]

[1]Reported in 286 P. (2d) 709.

*Taylor & Revelle* and *Elliott, Lee, Carney & Thomas,* for appellant.

*Hodge, Mann & Peterson,* for respondents Tacoma Boys' Club *et al.*

*The Attorney General* and *J. D. Thomas, Jr., Assistant,* for respondent state of Washington.

MALLERY, J.—In the early 1930's, the late Judge Fred Remann, juvenile court judge for Pierce county, felt the need of a boys' club in the city of Tacoma. By the late 1930's, a number of Tacoma civic leaders had joined forces under his leadership to satisfy that need.

The defendant organized a boys' club in 1938 with quarters on the second floor of its building. Major Earl Williams, an officer of defendant, must be credited with this accomplishment. About 1940, Judge Remann became a member of the advisory board of defendant.

In 1941, a Mr. and Mrs. Gould were employed by defendant to conduct a fund-raising campaign for the construction of a new and separate boys' club building. Subscription cards were distributed among the citizens of Tacoma, which read, *inter alia*:

"The Salvation Army Boys' CLUB BUILDING Campaign
    TACOMA, WASH. ............................1941
"I (we) the undersigned, in consideration of the gifts of others for a like purpose, do hereby subscribe and agree to pay to
            "THE SALVATION ARMY, (Inc.)
    for THE BOYS' CLUB OF TACOMA BUILDING FUND
............................................................................. DOLLARS $............"

Approximately twenty-five thousand dollars were raised. Fifteen hundred dollars were used to buy city lots upon which to erect a boys' club building. Title was taken in the name of defendant as trustee, as expressed in the following language:

"It is understood and agreed by and between the parties hereto that this deed is given for the purpose of providing a site for the erection and maintaining of a 'Boys' Club' thereon in the City of Tacoma."

Prior to the campaign, defendant, which had previously withdrawn from the community chest, re-entered it and submitted a budget for the Tacoma Boys' Club. At that time, the community chest made an allotment and thereafter has allocated moneys yearly to the Tacoma Boys' Club and has made monthly remittances to defendant's club account. Checks on this account were signed by the executive director of the Tacoma Boys' Club and an officer of the defendant.

The relationship between defendant and the Tacoma Boys' Club may be thus summarized: The boys' club funds both from subscriptions and the allocations of funds by the community chest, were never commingled with defendant's assets. Periodic accountings of the funds were made to the community chest authorities and the administrative committee of the Tacoma Boys' Club. The funds used for the construction of the Tacoma Boys' Club building and its maintenance were subscribed and contributed by a large number of donors for that express and single purpose. This is not, therefore, a case of donors who, because of confidence reposed in a trustee, have contributed funds to be used at its discretion in furtherance of its established purposes. The intention of the donors, in this case, cannot be derived from their individual thinking. It must be conclusively presumed that the purpose as stated on the subscription cards became the donors' purpose when subscriptions were made. It was thus definitely limited to a boys' club in Tacoma. It is equally clear that the property was taken and held in the name of defendant in trust for the Tacoma Boys' Club, which constituted a new and distinct activity for the defendant in the Tacoma community.

The management of the Tacoma Boys' Club has undergone an unusual transition. From the beginning, the relationship of the managing personnel of the club to the defendant has been both uncertain and controversial.

We think the details of the controversies are now of little significance, although their exposition took up most of the trial and are elaborately controverted on this appeal. There is also much confusion as to which of the several constitu-

tions for the Tacoma Boys' Club was the authoritative one. The first one proposed was prepared by Judge Remann, and the governing authorities of the Tacoma Boys' Club purported to act under it. However, it was never adopted in any official way. It will be hereinafter referred to as the Remann constitution. The constitution that was formally adopted was known as the Red Shield constitution and was prepared by defendant and members of its advisory board. It was approved by the Boys' Club of America at the time the Tacoma Boys' Club affiliated with that national organization. It will be referred to as the Red Shield constitution. The Remann constitution designated the governing body of the Tacoma Boys' Club as a "board of directors," whereas the Red Shield constitution used the term "administrative committee."

In the latter part of 1953, the governing body, by whatever name we choose to call it, requested defendant to take over the complete operation of the Tacoma Boys' Club or to relinquish all control. Defendant elected to take control and, in its attempt to do so, imposed still another constitution, which it had prepared. Purporting to exercise authority under the new constitution, defendant notified the governing body of the Tacoma Boys' Club that the executive director of the club, who had managed the club since 1943, would be relieved of his duties. His place was to be filled by a Mr. O'Neill from San Francisco, who was an officer in the Salvation Army. This brought the controversy between defendant and the governing body of the Tacoma Boys' Club to a climax.

The governing body rejected the new constitution proposed by defendant. The defendant then offered to take over operation of the club under the Red Shield constitution and promised to appoint a new governing body pursuant to the terms of that constitution, which would include in its personnel most of the former members of the governing body. This offer was unacceptable, and the governing body forthwith commenced this action to (a) obtain a transfer of the title to the property of the Tacoma Boys' Club from the defendant, as trustee, to a corporation to be formed by

the present administration pursuant to court order, which would hold the property in trust for the use of the Tacoma Boys' Club and to administer the same, and (b) to enjoin defendant from interfering with the management and control of the corporation so formed.

The trial court entered judgment as prayed, and the defendant appeals.

The trial court found that the future financial support to the Tacoma Boys' Club by the people of Tacoma would be adversely affected by the proposed replacement of the present administration personnel by the appellant.

■ We think the record supports this finding of fact. There have been no abuses perpetuated by the present governing body in the administration of the Tacoma Boys' Club, which has enjoyed a splendid growth and success. Appellant also is without fault. Indeed, it never asserted its rights and, therefore, never had an opportunity to do anything wrong. Appellant has been a "passive" trustee and has served as a mere receptacle for the title to the property of the Tacoma Boys' Club. Its proposal to change from a passive trustee to an active trustee by way of displacing the present successful management, brings into the foreground the trial court's finding of fact that such a change would jeopardize the financial future of the club.

The effect of the decree is to remove the bare legal title from the passive trustee and to make the corporation formed by and of the present active administration under court order, the trustee with legal title to the Tacoma Boys' Club property.

■ The appellant is being stripped of its bare legal title under the rule that where a trustee charged with the administration of a trust permits others to assume and perform its duties, it breaches the trust and the court may remove it.

We recognized the impropriety of the delegation of its authority by a trustee in *Meck v. Behrens,* 141 Wash. 676, 252 Pac. 91, 50 A. L. R. 207, wherein we said:

"It is undoubtedly the rule that, while a trustee may delegate to someone else a purely ministerial duty, he may not

delegate to another his discretionary powers. 39 Cyc., at page 304, states:

" 'It is a general rule that a trustee in whom there is vested discretionary powers involving personal confidence cannot delegate his powers and shift his responsibility to other persons.'

"This court so viewed the law in *Jesseph v. Carroll*, 126 Wash. 661, 219 Pac. 429, where we said:

" 'As to the second objection, the general rule undoubtedly is that the trustee vested with a power which involves personal discretion and judgment cannot delegate the execution of the power to another.' "

It cannot be doubted that for a number of years appellant has permitted the present administration to operate the Tacoma Boys' Club, nor is there any question that the administration has adhered to the intention of the donors of the funds as expressed in the subscription cards.

The trial court has the power to effectuate the purpose of a trust; and the supposed rights of a trustee, as such, will not operate to curtail its jurisdiction over the trust.

"If a good public charity is created by gifts upon condition or with limitations, or by gifts for particular purposes, or to a certain end, . . . the courts upon proper proceeding will correct all abuses, and restore the charitable gift to its original purpose." 2 Perry on Trusts and Trustees (7th ed.) 1273, § 744.

The appellant contends the trial court erroneously accepted as the purposes of the Tacoma Boys' Club those which were contained in the Remann constitution, which was never adopted.

There are no material differences in the purposes of the Tacoma Boys' Club as set out in the several constitutions involved. Appellant predicates no particular legal conclusion upon this asserted error, and we think it is immaterial. The intention and purpose of the donors must be determined from the subscription blanks, not from subsequently adopted constitutions.

Appellant contends that the trial court's use of the term "board of directors" in place of "administrative committee," was error, because it was the latter term which was used in the Red Shield constitution.

We think the manner of designating the governing body is immaterial and not determinative of any legal rights before us for adjudication.

██ The appellant takes exception to the findings of fact relating to the make-up and policies of appellant as being untrue in fact and disparaging in tone.

This is harmless error, in any event, for the reason that no part of this opinion is predicated upon the findings of fact complained of, and we sustain the decree upon the finding of fact that the future financial prejudice to the Tacoma Boys' Club would follow the appellant's proposed change in personnel.

The judgment is affirmed.

HAMLEY, C. J., HILL, WEAVER, and FINLEY, JJ., concur.