94 P.3d 975 (2004)
Shirley M. BOES, Appellant,
v.
Eric BISIAR and Jane Doe Bisiar, husband and wife, Respondents.
No. 21827-9-III.
Court of Appeals of Washington, Division 3, Panel Nine.
July 13, 2004.
*977 Stephen L. Nordstrom, Attorney at Law, Spokane, WA, for Appellant.
Steven R. Stocker, Matthew T. Ries, Attorneys at Law, Spokane, WA, for Respondent.
SWEENEY, J.
Service by publication first requires a diligent effort to serve and then some showing that the defendant is trying to avoid service. RCW 4.28.100(2). Our disposition here turns on the sufficiency of the plaintiff's showing that the defendant attempted to avoid service. We conclude that leaving the state for the final 10 days of the service period raises a sufficient inference of an attempt to avoid service of process. And we reverse the trial court's holding to the contrary.

FACTS
Eric Bisiar drove his car into Shirley Boes' car and injured her on July 12, 1999. Ms. Boes hired a lawyer, Stephen Nordstrom, on June 17, 2002, a few weeks before the statute of limitations was to run. Mr. Nordstrom secured a copy of the accident report. It included Mr. Bisiar's address and insurance information. He notified Mr. Bisiar's insurer that suit would be filed. He filed a complaint on June 27. He then set about to serve Mr. Bisiar personally.
On July 8, Mr. Nordstrom sent a professional process server to 16902 E. Belmont, Mica, Washington, the address listed on the accident report. The process server talked to the current residents. They had only recently moved in, did not know Mr. Bisiar, and reported that he was not the person who lived there before them. Mr. Nordstrom checked current Qwest Dex and regional telephone directories. He found no listing for Mr. Bisiar. He then made an Internet search of Washington, Oregon, and Idaho. Again he found no information on Mr. Bisiar.
Attorney Steven Stocker filed a notice of appearance on July 15 on behalf of Mr. Bisiar. The standard appearance form requested that "all further pleadings, other than process, be served" on Mr. Stocker. Clerk's Papers (CP) at 27. The form expressly denied waiver of "jurisdiction, venue or sufficiency of process." Id.
Mr. Nordstrom hired private investigator Jerry McGougan on July 19. Mr. McGougan checked police, utility, and voting records. He was unable to find any information on Mr. Bisiar. He did find a reference to a Rosemary Bisiar who lived at 1505 S. Barker Road, in Greenacres, Washington. He called the telephone number and identified himself. A male answered the phone, but hung up before Mr. McGougan could ask any questions.
Mr. Nordstrom gave Mr. McGougan's information to the process server to attempt service at the Greenacres address. On July 14, the process server spoke with a woman at the address who identified herself as Rosemary Bisiar. She is Mr. Bisiar's second cousin. Rosemary Bisiar said that Mr. Bisiar did not live with her. But "she [could] find out where [Mr. Bisiar] lives if we give her some[ ]time." CP at 70. The process server returned on August 10, 11, 23, 26, 28, and 30 and September 3, 5, and 7, but Rosemary Bisiar was never at home. Finally, on September 9, the process server spoke with a female resident. She said she was a distant relative of Mr. Bisiar's, but she had no idea how to reach him. She met him only once when she accidentally received his mail. She said that she thought Mr. Bisiar's stepfather's last name was Petty. But she knew no more about them or how to reach them.
The address listed on the registration for the vehicle Mr. Bisiar was driving at the time of the accident was 8414 North Palmer in Spokane. He claimed the car was his. The process server next attempted to serve Mr. *978 Bisiar at the North Palmer address on September 10. That car was registered to Stanley Fong at the North Palmer address. The process server spoke with a female resident at that address. She said her name was Fong, but Mr. Bisiar did not live there and she had no idea who he was.
On September 17, Mr. Nordstrom prepared an affidavit and summons by publication. The summons was published from September 20 until October 25 in the Valley News Herald, a weekly newspaper. Mr. Bisiar, meanwhile, made arrangements to leave the state. He flew to New York on September 18 and did not return until September 30. The statute of limitations for service purposes ran on September 28, 2002.
Mr. Bisiar moved for summary dismissal of Ms. Boes' suit because he "was never properly served with the Summons and Complaint, and the statute of limitations has expired." CP at 4. Mr. Nordstrom responded with an affidavit supplementing his first affidavit for publication. The court dismissed the complaint. Mr. Nordstrom moved for reconsideration. The court reconsidered and reinstated the complaint. Mr. Bisiar then moved for reconsideration. The court reversed its prior order and again dismissed the complaint. The court concluded that Ms. Boes had not shown that Mr. Bisiar attempted to avoid service of process.

DISCUSSION

STANDARD OF REVIEW
We review the trial court's summary dismissal here de novo. Bruff v. Main, 87 Wash.App. 609, 611, 943 P.2d 295 (1997). A trial court's findings of fact and conclusions of law following a summary judgment are then superfluous. Skimming v. Boxer, 119 Wash.App. 748, 755, 82 P.3d 707 (2004), petition for review filed (Wash. Feb. 26, 2004) (No. 75155-2).

SERVICE BY PUBLICATION
RCW 4.28.100(2)[1] authorizes service by publication when the defendant cannot be found in the state, and, with the intent to avoid service of a summons, he either conceals himself within the state or leaves the state. The plaintiff must also have made reasonably diligent efforts to personally serve the defendant. Charboneau Excavating, Inc. v. Turnipseed, 118 Wash.App. 358, 362, 75 P.3d 1011 (2003).
Mr. Nordstrom filed an affidavit. He filed a supplemental affidavit after service was challenged. We consider both affidavits.[2]
Mr. Bisiar argues that reliance on the hearsay statements from the private investigator about the hang-up call is inappropriate. But he makes this argument for the first time on appeal. This issue is not then preserved. See RAP 2.5(a); Cotton v. Kronenberg, 111 Wash.App. 258, 273, 44 P.3d 878 (2002), review denied, 148 Wash.2d 1011, 62 P.3d 890 (2003). And more importantly, our disposition here does not turn on this representation.

Diligent Effort to Serve
A party claiming jurisdiction pursuant to RCW 4.28.100 must show that service by publication was proper. Charboneau Excavating, 118 Wash.App. at 362, 75 P.3d 1011. A conclusory recitation of the requirements of the statute is not enough to make that showing. Id. "Washington courts have held that where a plaintiff possesses information that might reasonably assist in determining *979 a defendant's whereabouts, but fails to follow up on that information, the plaintiff has not made the honest and reasonable effort necessary to allow for service by publication." Brenner v. Port of Bellingham, 53 Wash.App. 182, 187, 765 P.2d 1333 (1989). Mr. Bisiar argues that Ms. Boes' failure to follow up on information known to her shows a failure to act with reasonable diligence in attempting to locate Mr. Bisiar.
In Parkash v. Perry, we held that "[a] mere search of the telephone listings and an attempt to serve Miss Perry at her old residence, in light of the facts revealed by this record" was insufficient to show due diligence. Parkash v. Perry, 40 Wash.App. 849, 853-54, 700 P.2d 1201 (1985). But there the plaintiff (1) failed to follow up on information in the accident report and (2) failed to follow up on a tip from the defendant's former neighbor about where she might have moved. Here, Ms. Boes used all information reasonably available to her.
Similarly, in Charboneau Excavating, we found the plaintiff's efforts inadequate where it did not try to contact the defendant's wife or daughter even though it knew of their whereabouts. Charboneau Excavating, 118 Wash.App. at 363, 75 P.3d 1011. The plaintiff also did not try to serve the defendant at the correct address it discovered from its investigation or follow up by checking the county tax assessor's records which confirmed that tip to be correct. And, finally, the plaintiff spent only $36 on process servers. Id. at 360-61, 75 P.3d 1011. Again, that did not happen here. Ms. Boes exhausted reasonable leads and repeatedly attempted to serve Mr. Bisiar.
Mr. Bisiar relies on Dobbins v. Mendoza for the proposition that failure to check the county tax rolls shows a lack of diligence. Dobbins v. Mendoza, 88 Wash.App. 862, 947 P.2d 1229 (1997). But Dobbins was a real estate foreclosure. And the tax records both related to the suit (real estate) and were readily available to the plaintiff. Id. at 873, 947 P.2d 1229. It was then unreasonable for the plaintiff to fail to check those records which related to the subject matter of the litigation.
This suit followed an automobile accident. Ms. Boes followed information related to Mr. Bisiar's car. The tax information Mr. Bisiar references are personal and business taxes. They have nothing to do with the car or the accident. And there is nothing in the facts known to Ms. Boes which suggests that such a tax search would be helpful. Our focus is, moreover, on what reasonable steps the plaintiff did take in light of what she knew  not on what other steps were possible. Carras v. Johnson, 77 Wash.App. 588, 593, 892 P.2d 780 (1995). And here those efforts included a diligent search by counsel and further efforts by a professional investigator and process server. CP at 65-73. That is enough to satisfy the diligence requirement of RCW 4.28.100.

Intent to Avoid Service
The procedural requirements of RCW 4.28.100 must be strictly followed. But we decide whether there has been strict compliance with the statute on a case-by-case basis. Longview Fibre Co. v. Stokes, 52 Wash.App. 241, 245, 758 P.2d 1006 (1988). And it is, again, a question of law we review de novo. Bruff v. Main, 87 Wash.App. 609, 611, 943 P.2d 295 (1997).
The parties argue over the standard of proof required by Bruff. Mr. Bisiar argues that the affidavit for publication must set forth facts that "clearly suggest" intent to avoid service; he urges this showing has not been made here. Resp't's Br. at 20 (citing Bruff, 87 Wash.App. at 613, 943 P.2d 295). But it is the affidavit that must "`clearly show [ ] all the conditions required.'" Bruff, 87 Wash.App. at 612, 943 P.2d 295 (emphasis added) (quoting Jones v. Stebbins, 122 Wash.2d 471, 482, 860 P.2d 1009 (1993)) (citing Jesseph v. Carroll, 126 Wash. 661, 666, 219 P. 429 (1923)). This relates to the sufficiency of the affidavit. Where a particular affidavit "clearly shows" that all statutory conditions are present for service by publication, the affidavit is sufficient. Bruff, 87 Wash.App. at 612, 943 P.2d 295; Jones, 122 Wash.2d at 482, 860 P.2d 1009; Jesseph, 126 Wash. at 666, 219 P. 429. The affidavit must clearly articulate facts to meet the required conditions, not clearly prove intent to avoid *980 service. Bruff, 87 Wash.App. at 612, 943 P.2d 295; Jones, 122 Wash.2d at 482, 860 P.2d 1009; Jesseph, 126 Wash. at 666, 219 P. 429. Indeed, short of a full fact-finding hearing, a finding on what Mr. Bisiar knew or intended when he left the state is impossible. 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 16.3, at 158 (2004).[3] And the statute does not require or even contemplate such a hearing. RCW 4.28.100(2).
The court in Bruff ultimately held that the affidavits were insufficient because they included only "conclusory allegations." Bruff, 87 Wash.App. at 612, 943 P.2d 295. The affidavits there failed to set out the steps taken to personally serve the defendant. Id. And they made the " bare allegation"  without factual support  that the defendant had "a history of credit problems." Id. at 612-13, 943 P.2d 295. They then used this allegation to justify publication. Id. Other affidavits filed in the case merely stated conclusions such as that the defendant was not employed, had an unlisted telephone number, and never lived at the address listed in the police report which the plaintiff had. Id. at 613, 943 P.2d 295. But the plaintiff did not state how the affiant came about this information. Id. The court then concluded that the showing was insufficient. And, the court held, the mere fact that the defendant's "lack of a `public recorded persona,' without more" does not raise "an inference that he or she is attempting to defraud creditors or avoid process." Id. (emphasis added). There is nothing new in the analysis or standard set out in Bruff.
Mr. Bisiar argues that the court in Bruff sets a more vigorous legal standard for proof of intent  that plaintiff set forth facts "clearly suggesting" intent to evade service. But that quoted language relates to what facts were present or not present in the Bruff case. Bruff does not set a new legal standard. Rather, the court summarized in its conclusion, "[i]n sum, the Bruffs' affidavits contained no facts clearly suggesting that Main's change of residence, or any other conduct, was undertaken with the intent required by RCW 4.28.100(2). RCW 4.28.100(2) does not authorize service by publication merely because the Bruffs were unable to locate Main, despite diligent efforts." Bruff, 87 Wash.App. at 614, 943 P.2d 295.
The facts here are distinguishable. Mr. Bisiar left the state for the final 10 days in which Ms. Boes had to serve him. Mr. Bisiar argues that the true purpose of this trip was to accompany his grandfather, who was uncomfortable flying, on a trip to New York. But our focus is on the showing in Ms. Boes' affidavits. From those affidavits, Mr. Bisiar's absence during this critical period, together with his knowledge that the statute was running out, supports the required inference of intent to avoid service.

CONCLUSION
The affidavits filed on behalf of Ms. Boes sufficiently show the exercise of due diligence in attempting to serve Mr. Bisiar and support at least an inference that Mr. Bisiar intended to evade service of process.
*981 We reverse the summary dismissal of the suit.
WE CONCUR: KATO, C.J., and KURTZ, J.
NOTES
[1] "When the defendant cannot be found within the state, and upon the filing of an affidavit ..., stating that he believes that the defendant is not a resident of the state, or cannot be found therein, ... and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons, by the plaintiff or his attorney in any of the following cases:

"....
"(2) When the defendant, being a resident of this state, has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, or keeps himself concealed therein with like intent." RCW 4.28.100.
[2] Dobbins v. Mendoza, 88 Wash.App. 862, 872-73, 947 P.2d 1229 (1997); Brennan v. Hurt, 59 Wash.App. 315, 318-19, 796 P.2d 786 (1990); see also First Fed. Sav. & Loan Ass'n of Walla Walla v. Ekanger, 93 Wash.2d 777, 782, 613 P.2d 129 (1980) (affidavit for publication can be supplemented or amended if it merely alters the record to reflect what actually happened).
[3] Professor Tegland writes: "In a 1997 case, Division 1 of the Court of Appeals held that the plaintiff was required to prove such intent to justify service by publication, and that proof of intent was separate from, and in addition to, proof of a diligent search.

"The holding in Bruff seems relatively restrictive. In future cases, if a defendant has essentially rendered himself or herself invisible and cannot be located even by professional investigators, it will obviously be difficult for the plaintiff to prove the defendant's state of mind subsequent to the events in question. How can the plaintiff prove the defendant's present intentions if the defendant, for all practical purposes, does not exist?
"Arguably, at least, the court in Bruff left the door open  or at least slightly ajar  to proof of intent by circumstantial evidence and inference. In dictum, the court suggested that service by publication might have been warranted in Bruff if the plaintiff had been able to provide more details as to the defendant's credit problems in the past, particularly if the plaintiff had been able to show that the defendant had sought to avoid creditors under similar circumstances in the past. The court suggested, without saying so directly, that such proof might have supported an inference of the intent required under the statute." 15A TEGLAND & ENDE, supra, at 158 (citation omitted).