# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CYNTHIA RUTTER, Personal Representative of the Estate of Elaine C. Reeves, | ) ) ) ) | No. 77851-0-I consolidated with No. 77855-2-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | |
| BRIAN REEVES, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: July 29, 2019 |

MANN, A.C.J. — In an attempt to discharge her duties as the personal representative of the estate of Elaine C. Reeves, Elaine's daughter, Cynthia Rutter, filed an action for quiet title and ejectment against her brother, Brian Reeves, seeking his removal from a Kirkland residence owned by the estate.[1] Brian appeals the trial court's order denying his attempt to vacate a default judgment entered after he failed to respond to service by mail of the summons and complaint.[2] We affirm.

---

[1] The parties will be referred to by their first name to avoid confusion, no disrespect is intended.

[2] Brian makes several assignments of error that are not argued in his brief. These include: (1) that California law should have been applied instead of Washington law, (2) that Brian had a colorable claim of title to the Kirkland property, since it was gifted to him through the trust, and should have prevented Cynthia from evicting him, and (3) that it was improper for Cynthia to sell Brian's personal property and vehicles after eviction. We decline to address assignments of error that are not supported by any argument in the brief. State v. James, 36 Wn.2d 882, 891, 221 P.2d 482 (1950). Moreover, Brian's arguments concerning the handling of probate or the trust distribution are not properly before us.

I.

Elaine died on December 5, 2013. Hours prior to her death, Elaine executed the Elaine C. Reeves Trust (trust) and a "pour over" will leaving to the trust all of her probate assets not already transferred to the trust. Elaine made Cynthia the personal representative and executor of her will and trustee of the trust. The trust provided that, upon the death of Elaine, the trustee was directed to make four specific distributions from the trust property: $100,000 each to her two grandchildren, a timeshare in Maui to Cynthia, and a property in Kirkland to Brian. Brian was living at the Kirkland property when Elaine died.

Elaine believed that the gifts to her grandchildren would be funded from her Boeing VIP savings account, valued at $537,074.22 as of her death. The Boeing VIP savings account, however, was a payable on death account, governed by ERISA, which listed Cynthia and Brian as the beneficiaries. Cynthia and Brian each received a little more than $250,000 from the Boeing VIP savings account.

Since the Boeing VIP savings account could not be transferred to the trust, the trust could not pay the estate's expenses and satisfy the monetary gifts to Elaine's grandchildren. To avoid selling the Kirkland property, Cynthia tried to reach a mutual agreement with Brian where she and Brian would pay, from their portions of the Boeing VIP savings account, the gifts to the grandchildren and their portions of the estate

---

The only issue properly before us is the issuance of the default judgment on the estate's complaint to quiet title and for ejectment.

expenses.[3] Cynthia also tried to reach an agreement with Brian where he would pay the bills associated with the Kirkland property.

After attempting communications with Brian for two years, Cynthia's attorney sent a letter to Brian on July 13, 2015, explaining how he could receive the Kirkland property free and clear:

> If you and the other trust beneficiaries can reach an agreement to use a portion of the VIP assets to augment the trust, it is entirely possible that the trust distributions could be made, including distributing the house to you. If you wish to explore such an agreement, please contact me, or have your attorney do so. If I do not receive a response within seven days of your receipt of this letter, I must assume that you do not wish to discuss such an agreement.
> Unless the beneficiaries reach such an agreement, the trust simply does not have sufficient assets to make the distributions. The Trustee will have no choice but to sell the house, and to use the proceeds of the sale to pay off the mortgage on the property and then make partial distributions to the trust beneficiaries as directed under Washington state law in such situations.

The letter also contained a proposed lease agreement, where Brian would pay $2,000 a month to the estate for expenses related to the Kirkland property. The letter was sent certified mail to Brian at the Kirkland property but was returned to sender for being unclaimed.

The Kirkland property was encumbered by a mortgage of $48,443.69. Cynthia paid off the mortgage with her own funds and the bank reconveyed the Kirkland property to the estate. On September 6, 2016, Cynthia's attorney sent another letter to Brian. This letter was sent certified mail to Brian at the Kirkland property but was returned to sender as undeliverable.

---

[3] Cynthia paid all expenses related to the Kirkland property and a credit card in Elaine's name that Brian used for his personal expenses. Cynthia expected Brian to repay her for these expenses.

As personal representative, Cynthia incurred $78,509.80 in personal expenses related to the Kirkland property, including payments on the loan, property taxes, property insurance, utilities, and homeowner association dues. Cynthia also paid other expenses relating to the estate, totaling $78,486.67— $22,022.52 of which was a credit card in Elaine's name that Brian used for his personal expenses.

On November 9, 2016, Cynthia posted a three-day notice for Brian to surrender the premises at the Kirkland property. On November 22, 2016, Cynthia filed a complaint for quiet title and ejectment. Cynthia hired a process server to personally serve Brian. The process server made four unsuccessful attempts at the Kirkland property. On November 23 at 4:04 p.m., the process server noted "No answer, dog barking inside." On November 28 at 5:12 p.m., the process server noted "No answer, dog barking inside." On November 29 at 5:13 p.m., the process server noted "Same as previous attempt." On November 30 at 2:10 p.m., the process server noted

> No answer, dark. Dog inside. All windows totally obscured. Per neighbor to the right, he comes out rarely during the day and usually leaves at eight or nine or 10 o'clock at night and returns in the middle of the night. Per neighbors, he drives a black Jeep. There was a black Jeep parked on the street with license number AMF3882. Neighbors believe he may be armed.

Cynthia provided the process server with Brian's last known place of employment, the Horseshoe Saloon. The process server called the Horseshoe Saloon on December 2 at 5:15 p.m. and spoke with Jim, the owner. Jim said that Brian no longer worked there. On the same day, another service processor went to the Horseshoe Saloon and noted "No sign of defendant or his vehicles. Interacted with Jim,

AJ, Austin, and Michelle. None of the regulars mentioned Brian Reeves (aka Baron). The undersigned was on-site from 4:45 p.m. to 7:45 p.m."

On December 8, 2016, a superior court commissioner granted Cynthia's motion for an order allowing service by mail. The summons and complaint were then mailed to Brian at the Kirkland residence and his last known place of employment, allowing 90 days to respond. Brian did not respond. On March 23, 2017, a superior court commissioner entered a default judgment quieting title and directing issuance of a writ of execution for the Kirkland property. Cynthia posted a bond, allowing the sheriff to break and enter under the writ of execution. On May 16, 2017, the sheriff executed the writ and found that Brian had vacated the property.

Brian's attorney filed a notice of appearance on May 17, 2017. On September 29, 2017, Brian answered the complaint and moved to vacate the default judgment.

On October 17, 2017, a superior court commissioner denied Brian's motion to vacate the default judgment. Brian's motion for revision of the commissioner's order was then denied by the superior court. Brian appeals.

II.

Brian does not contest that he received service of the summons and complaint by mail. Instead he contends the default judgment was void because the order authorizing service by mail was improper. We disagree.

A motion for revision of a commissioner's ruling is reviewed de novo by the superior court. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). Under RCW 2.24.050, the findings and orders of a court commissioner not successfully revised

-5-

become the orders and findings of the superior court. On appeal, we review only the superior court's decision. Ramer, 151 Wn.2d at 113.

Brian challenges the superior court's denial of his motion for revision based on CR 60(b)(5), contending that the default judgment was void for inadequate service. We review CR 60 challenges to default judgments for lack of jurisdiction de novo. Dobbins v. Mendoza, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997). "A default judgment entered without personal jurisdiction is void." Ha v. Signal Elec. Inc., 182 Wn. App. 436, 447, 332 P.3d 991 (2014). "Proper service of the summons and complaint is essential to invoke personal jurisdiction." Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014).

RCW 4.28.100 authorizes service by publication, including service by mail. Jones v. Stebbins, 122 Wn.2d 471, 479, 860 P.2d 1009 (1993). When a defendant is avoiding service of process the plaintiff may file an affidavit for approval of service by mail. RCW 4.28.100 states in relevant part:

> **Service of summons by publication—When authorized.** When the defendant cannot be found within the state, and upon the filing of an affidavit of the plaintiff, his or her agent, or attorney, with the clerk of the court, stating that he or she believes that the defendant . . . cannot be found therein, and that he or she has deposited a copy of the summons . . . and complaint in the post office, directed to the defendant at his or her place of residence . . . the service may be made by publication of the summons, by the plaintiff of his or her attorney in any of the following cases:
>
> . . .
> (2) When the defendant, being a resident of this state, has departed therefrom with intent to defraud his or her creditors, or to avoid the service of a summons, or keeps himself or herself concealed therein with like intent.[4]

---

4 (Emphasis added.)

Service by publication is "in derogation of the common law," thus a party must strictly comply with the statute authorizing service by publication. Rodriguez v. James-Jackson, 127 Wn. App. 139, 143, 111 P.3d 271 (2005). The specific requirements of RCW 4.28.100 must be met. Lepesky v. Farley, 67 Wn. App. 548, 553, 833 P.2d 437 (1992). A declaration filed in support of a motion to serve by mail "that omits the essential statutory elements is as good as no affidavit at all." Id. at 553-554 (quoting Kent v. Lee, 52 Wn. App. 576, 579, 762 P.2d 24 (1988)). The plaintiff's declaration "must clearly articulate facts to meet the required conditions, not clearly prove intent to avoid service."[5] Boes v. Bisiar, 122 Wn. App. 569, 577, 94 P.3d 975 (2004). When a defendant challenges the sufficiency of service, we consider both the original declaration and any declarations submitted after the challenge to service by publication. Boes, 122 Wn. App. at 574. Here, the facts stated in the declarations must demonstrate that Brian is a Washington resident, was concealing himself for the purposes of avoiding service, and that Cynthia made reasonably diligent efforts to locate Brian. Jones, 122 Wn.2d at 482.

There is ample evidence in the declarations of Cynthia's attorney, Hans Juhl, the process servers, Cynthia, and Richard Reeves, Brian and Cynthia's father to support service by mail. For example, Brian knew that Cynthia wanted him to vacate the house. Cynthia and her attorneys sent several letters to Brian outlining a plan to execute Elaine's will and transfer to him the Kirkland property. Brian did not respond to any of these letters. Richard found at least nine unopened letters from Cynthia to Brian at the

---

[5] (Emphasis added.)

-7-

Kirkland property. On November 9, 2016, Cynthia posted a three-day notice to vacate.

On November 11, 2016, Richard received a text message from Brian stating

> Happy Veteran's Day Dad and thank you for your service! Please let my sister know that I will not be vacating the home that my Mother wanted me to have & that she may proceed with all the legal action against me that she likes. . . I am able to reciprocate. Thanks again.

Brian also disabled the doorbell making it difficult for people to contact him.

Cynthia hired a process server who attempted to serve Brian at the Kirkland property on November 23, 2016 at 4:04 p.m., November 28, 2016 at 5:12 p.m., November 29, 2016 at 5:13 p.m., November 30, 2016 at 2:10 p.m., and at his last known employer, the Horseshoe Saloon in Woodinville on December 2, 2016. All attempts were unsuccessful. During the November 30th attempt, the service processor noted "No answer, dark. Dog inside. All windows totally obscured. Per neighbor to the right, he comes out rarely during the day and usually leaves at eight or nine or 10 o'clock at night and returns in the middle of the night." Brian does not dispute that he was living at the Kirkland property during that period.

The declarations demonstrate that Brian was concealing himself to avoid service and that Cynthia made reasonably diligent efforts to locate him. Thus, the requirements under RCW 4.28.100(2) for service by mail were satisfied. Because Richard does not argue that he was not served by mail, there is no basis to vacate the default judgment.

III.

The estate prevails on appeal and requests an award of attorney fees. We may grant an award of reasonable attorney fees on appeal, so long as applicable law provides for such an award. RAP 18.1. Trial and appellate courts have broad

discretion to award attorney fees to the prevailing party in litigation involving trusts and estates. RCW 11.96A.150; In re Estate of Love, 191 Wn. App. 216, 239, 361 P.3d 789 (2015). "RCW 11.96A.150 grants broad discretion to courts to award attorney fees 'in such manner as the court determines to be equitable' in all 'all proceedings governed by this title,' i.e. under Title 11 RCW. The authority granted by RCW 11.96A.150 to award attorney fees is not limited to actions initiated under chapter 11.96A RCW." In re Estate of Berry, 189 Wn. App. 368, 379, 358 P.3d 426 (2015).

We award attorney fees to the estate, to be paid by Brian. The estate is the prevailing party. RCW 11.48.020 grants the personal representative the "right to the immediate possession of all the real as well as personal estate of the deceased." After repeated efforts to work with Brian, Cynthia—acting as the personal representative of the estate—brought this action to discharge her duties as personal representative to take possession of the estate property in order to carry out Elaine's intent. Brian does not contest that he was served the summons and complaint by mail and failed to respond resulting in a default judgment and his ejection from the property. The costs of Brian's challenge to the order authorizing service by mail should not equitably be borne by the estate. We award reasonable attorney fees to the estate upon compliance with RAP 18.1.

We affirm.

_____
Mann, A.C.J.

WE CONCUR:

_____
Schindler, J

_____
Dwyer, J.