IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 81862-7-I |
| SHRUTI R. VAN WICKLEN, | DIVISION ONE |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ROBERT WILLIAM VAN WICKLEN, | |
| Appellant. | |

CHUN, J. — Shruti Van Wicklen petitioned for marital dissolution against Robert Van Wicklen.  After Shruti's process server could not find Robert at their marital home, Shruti moved for the trial court to allow service by mail.[1]  The trial court granted her motion.  Shruti served Robert by mail and Robert did not respond to her petition.  The trial court later entered a default order against Robert, denied his motion to vacate it, and entered a final order of dissolution.  Robert appeals, claiming the trial court erroneously allowed service by mail and thus that it does not have personal jurisdiction over him.  For the reasons discussed below, we affirm.

## I. BACKGROUND

Shruti and Robert married in 2009.  The couple shared a marital home in Monroe and separated when Shruti moved out in November 2018.  At some point

---

[1] For clarity, we refer to the parties by their first names.  We intend no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

after the separation, Robert left the marital home for his parents' home in New York State, where he stayed "temporarily for emotional support arising out of [the] separation."

In February 2019, Shruti petitioned for dissolution against Robert. Her attorney e-mailed the petition to Robert with an acceptance of service form. Robert did not respond. Over the course of five days, a process server made four unsuccessful attempts to serve Robert at the marital home. On each attempt, no one answered the door and the house appeared dark and quiet with no vehicles present. Process servers attempted twice to call Robert's cell phone to arrange service, but he did not answer or respond to two separate voice mails. After learning that the process server had been unsuccessful, Shruti called Robert's mother to see if she had been in touch with him. Robert's mother said that "she had spoken to [Robert] and he was 'okay' but he told them he had left the house in Monroe and wouldn't say where he was.'"

In March 2019, Shruti moved to serve Robert by mail. In her motion, she alleged that Robert was "hiding to avoid being served," that to the best of her knowledge, Robert still resided at the Monroe martial home, and that service by mail would be as effective as service by publication. The motion detailed her attempts to e-mail Robert the petition, have process servers serve him, and her contact with his mother.

A day after Shruti filed her motion, Robert sent an e-mail to Shruti in which he said he was in the final stages of retaining legal representation and that he did

not intend to discuss personal matters with her any further.  He wrote that unless she withdrew her petition, he would communicate with her only through legal counsel going forward.  He did not provide her with his location or return the acceptance of service form.

Two days after Robert's e-mail, a commissioner entered an order allowing service by mail and Shruti served Robert by mail the same day.  Robert did not respond.

In April 2019, Robert e-mailed Shruti, telling her that he had "no obligation to respond promptly (or at all)" when she contacted him, and asking her to refrain from contacting his parents.

In August 2019, Shruti moved for default as Robert had not yet filed a response to her petition.  A commissioner granted her motion for default and found that Robert had been properly served.

In October 2019, a commissioner appointed a special master to assist in the division of the couple's property.

In December 2019, Shruti moved to enter final orders and scheduled a hearing for December 30.  Shruti mailed the notice of hearing, proposed findings of fact and conclusions, and proposed final divorce order to the Monroe marital home and to Robert's parents' home in New York State.  Robert's attorney filed a notice of appearance on December 29 but neither Robert nor his counsel appeared at the hearing.  The commissioner signed an order authorizing the

special master to dispose of the parties' property but did not sign final orders given Robert's recent hiring of counsel.

In March 2020, Robert responded to Shruti's interrogatories from March 2019 and apparently sent his own discovery requests to Shruti.[2]  In April 2020, Robert answered Shruti's divorce petition.  In his answer, he requested that the court evenly split the couple's property, and that it not impose maintenance or order him to pay Shruti's attorney fees.

In May 2020, Robert moved to vacate the default order under CR 55(c)(1).  Robert acknowledged in his motion that he had been served with the petition on or about March 7, 2019.  He requested that the court vacate the default order because of his excusable neglect; his motion stated that he

> is on the autism spectrum and was overwhelmed at the very thought of divorce, let alone the procedural requirements of proceeding in a case.  It was not until the default was entered that he realized that the case could be decided without his input if he did not obtain counsel.  He has since done so and has responded to the petition, thus acting with due diligence.

Shruti opposed the motion and said that Robert's autism was not so severe as to prevent him from taking part in the action and that Robert could not object to service by mail.  In a reply declaration supporting his motion to vacate, Robert said that service by mail was improper, that Shruti "mailed the summons to [their] marital home where she knew [he] wasn't present," and that he was unaware of any service in the case until December 2019, when Shruti sent the notice of a final hearing to his parents' home.

---

[2] These discovery requests do not appear in the record.

At a hearing on the motion to vacate, Robert objected to the default order on grounds that service by mail was improper. The commissioner disagreed and denied Robert's motion to vacate.

Robert moved for revision, claiming that service by mail was unlawful. The trial court denied his motion. It also entered an order finding that because it denied Robert's motion to vacate, he was in default, and so it would proceed with final orders. It then entered findings and conclusions about the marriage and a final divorce order.

## II. ANALYSIS

Robert says the trial court erred in authorizing service by mail against him because (1) Shruti did not perform a diligent search, (2) he did not conceal himself within the state, and (3) he did not leave Washington with intent to avoid service of process. Shruti says that Robert waived this issue by requesting affirmative relief and that service by mail was proper. We agree that Robert waived his challenge, and even if we considered it, we would conclude the trial court did not err.

We review de novo whether service of process was proper. Pascua v. Heil, 126 Wn. App. 520, 527, 108 P.3d 1253 (2005). "'Proper service of the summons and complaint is essential to invoke personal jurisdiction over a party, and a default judgment entered without proper jurisdiction is void.'" Ahten v. Barnes, 158 Wn. App. 343, 349–50, 242 P.3d 35 (2010) (quoting In re Marriage of Markowski, 50 Wn. App. 633, 635–36, 749 P.2d 754 (1988)). A default

judgment may be set aside in accordance with CR 60(b), as when the judgment is void. CR 55(c)(1). We review de novo rulings on a CR 60(b) motion to vacate a default judgment for lack of jurisdiction. Ahten, 158 Wn. App. at 350.

A court may allow substitute service by publication or mail if the petitioner establishes: "(1) that the defendant could not be found in Washington after a diligent search, (2) that the defendant was a resident of Washington, and (3) that the defendant had either left the state or concealed [themselves] within it, with intent to defraud creditors or avoid service of process." Pascua, 126 Wn. App. at 526–27; RCW 4.28.100(2) (outlining the requirements for allowing substitute service by publication). A court may allow service by mail if it is just as likely to give actual notice as service by publication. CR 4(d)(4). The law requires strict compliance with the statutes for substituted service. Martin v. Meier, 111 Wn.2d 471, 479, 760 P.2d 925 (1988).

A. Waiver

Shruti says that Robert waived the issue of insufficient service by requesting affirmative relief. We agree.

"Generally, lack of personal jurisdiction must be pleaded in the answer or in a pretrial motion to dismiss or it is waived." Sutton v. Hirvonen, 113 Wn.2d 1, 5, 775 P.2d 448 (1989). Waiver can occur if the defendant's assertion of the defense of insufficient service is inconsistent with their previous behavior, or if their counsel has been dilatory in asserting the defense. Lybbert v. Grant County, 141 Wn.2d 29, 38–39, 1 P.3d 1124 (2000). A party waives their lack of

personal jurisdiction claim if, before the court rules, they request affirmative relief or otherwise consent, expressly or impliedly, to the court's personal jurisdiction. In re Marriage of Steele, 90 Wn. App. 992, 997–98, 957 P.2d 247 (1998) (noting that "[i]f [the respondent] elected to appear . . . he was required to raise a claim of lack of personal jurisdiction by answer or pre-answer CR 12 motion, and not to consent, expressly or impliedly, to the court's exercising personal jurisdiction"). "If a party wishes to claim lack of personal jurisdiction, [they] must do so (a) as soon as reasonably practicable and (b) consistently." Id. at 998.

In his answer to the dissolution petition, Robert requested affirmative relief by asking the court to evenly divide his and Shruti's property, and by asking the court not to impose maintenance or order him to pay Shruti's attorney fees. Robert did not file any CR 12 motion claiming improper service. And while Robert had already waived the issue when moving to vacate, he did not raise the issue in the initial motion and first mentioned it only in his reply declaration. See Admasu v. Port of Seattle, 185 Wn. App. 23, 40, 340 P.3d 873 (2014) (holding a moving party cannot raise new issues in their rebuttal materials). Robert waived the issue of improper service.[3]

---

[3] Shruti suggests Robert waived this issue by propounding discovery before raising it. See Lybbert v. Grant County, 141 Wn.2d at 41–42 (holding that propounding discovery unrelated to the issue of insufficient service can elicit the inference that a defendant was dilatory in raising the affirmative defense of insufficient service). But since the content of the discovery supposedly propounded by Robert is not in record, we cannot decide this issue on this ground.

Robert counters that Shruti waived her claim that he waived the issue of improper service by raising it for the first time on appeal, citing RAP 2.5(a). But we may affirm the trial court on any basis supported by the pleadings and record. Ladenburg v. Campbell, 56 Wn. App. 701, 703, 784 P.2d 1306 (1990).

B. Merits

Even if we considered the merits of the issues Robert raises, we would conclude the trial court did not err in allowing substitute service by mail.

1. Diligent efforts to locate Robert

Robert says that Shruti did not conduct a diligent search to find him. We disagree.

"'Due diligence' requires that the plaintiff make 'honest and reasonable efforts to locate the defendant.'" Pascua, 126 Wn. App. at 529 (quoting Martin, 111 Wn.2d at 482). A plaintiff need not "employ all conceivable means to locate the defendant" but must "follow up on any information possessed that might reasonably assist in determining the defendant's whereabouts." Id. "Reasonable diligence requires contacting known third parties who may have knowledge of the defendant's whereabouts." Id. A court should analyze "what reasonable steps the plaintiff did take in light of what [they] knew—not on what other steps were possible." Boes v. Bisiar, 122 Wn. App. 569, 576, 94 P.3d 975 (2004).

Robert says Shruti did not conduct a reasonable search because her process server attempted only four times to serve him at the marital home. He compares this case to Cito v. Rios, in which the court held the plaintiff conducted a reasonably diligent search after he spent two months attempting service before moving for substitute service. 3 Wn. App. 2d 748, 752–53, 761–62, 418 P.3d 811 (2018). But we decide whether a plaintiff has complied with process requirements on a case-by-case basis. Boes, 122 Wn. App. at 576. And here, it

8

appears Shruti conducted a diligent search. Not only did Shruti's process servers attempt four times over the course of five days to serve Robert; they also called Robert twice to arrange service, and left messages to which he did not respond. Shruti also called Robert's mother, who told Shruti she did not know Robert's location even though he apparently was staying with his parents in New York State.

Robert suggests that Shruti did not conduct a diligent search because she did not, for example, contact Robert's neighbors about his whereabouts, hire a private investigator, check with the post office to see if he had changed his address, or check any third party records. Though Robert does not explain how any of these means would have yielded his location, the likelihood of success of a search method is not determinative in our analysis. See Pascua, 126 Wn. App. at 530. More importantly, no reasonable leads suggested that Shruti should pursue any of these methods of investigation. Id. ("*Where a reasonable lead exists*, it is the act of pursuing that lead, not its ultimate success, which evidences due diligence." (emphasis added)).

Robert also says that Shruti should have attempted to serve him at a house they owned together in Bellevue or at his parents' home in New York State. Yet Robert points to nothing in the record suggesting that he ever lived in the Bellevue home or why he would have moved to Bellevue after Shruti left their marital home in Monroe. Nor was it necessarily reasonable for Shruti to attempt

to serve Robert in New York State after his mother denied knowing where he was.[4]

2. Evidence of concealment by Robert

Robert indicates the record does not show that he tried to conceal himself from service or leave Washington with intent to avoid service. We disagree.

An affidavit supporting a motion for substitute service must clearly articulate facts showing an intent to avoid service. Boes, 122 Wn. App. at 577.

Here, Shruti stated in a declaration within her motion that she e-mailed Robert the petition along with an acceptance of service form. Although they had been corresponding via that e-mail address, Robert did not respond. The trial court, when deciding whether to vacate the default order, also considered an e-mail Robert sent one day after Shruti filed her motion for service by mail in which he said that he would not further correspond with Shruti unless she withdrew her divorce petition.

Robert's absence from the Monroe home, when coupled with his knowledge of the petition as established by his e-mail correspondence with Shruti, his mother's statement that he did not want anyone to know where he was, his nonresponse to calls and voice messages from process servers, all evince the inference that he intended to avoid service.

---

[4] Robert says the fact that Shruti later mailed the final notice of hearing to his parents' home in New York State and the fact that her counsel said Robert was staying at his parents' home in New York at oral argument for his motion to vacate the default judgment suggests that she did not conduct a diligent search. But her knowledge of his whereabouts ten months after service by mail has no bearing on her efforts to find him before moving for substitute service.

Robert analogizes to In re Marriage of Logg, in which the court held a long-haul trucker who had notice of a divorce petition but could not be served because he was on the road did not conceal himself to avoid service, and instead was merely difficult to find. 74 Wn. App. 781, 785, 875 P.2d 647 (1994). Robert's suggestion that he was merely difficult to find belies his apparent statement that he did not want anyone to know his location and his refusal to correspond with Shruti unless she withdrew the petition.

Robert also contrasts his case with Kennedy v. Korth, in which the court held there could be no showing that the defendant left the United States for the purpose of avoiding service of process because he relocated to Germany before the plaintiffs filed medical malpractice lawsuits against him. 35 Wn. App. 622, 624, 668 P.2d 614 (1983). Unlike in Kennedy, the record does not show when Robert relocated to his parents' home, and more facts than his mere relocation show his intent to avoid service.

3. Likelihood that service by mail would give notice

Last, Robert says that no articulable facts support Shruti's assertion that service by mail was just as likely to give him notice of the proceedings as service by publication. But the motion states that the Monroe marital home was Robert's last known mailing address and that to the best of Shruti's knowledge, Robert continued to reside there. And it is unclear what facts, if any, support Robert's assertion that service by publication in a newspaper of general circulation in Snohomish County was more likely to be effective than service by mail. See

11

RCW 4.28.110 ("The publication shall be made in a newspaper of general circulation in the county where the action is brought").

We affirm.

_Chun, J._

WE CONCUR:

_Coburn, J._          _Verellen, J._