[No. 21244-3-I.  Division One.  January 9, 1989.]

IRWIN BRENNER, *as Personal Representative, Appellant,* v.
THE PORT OF BELLINGHAM, *Respondent.*

*Mary K. Becker* and *Brett & Daugert,* for appellant.
*Steven J. Mura,* for respondent.

WINSOR, J.—Plaintiff's claim is for damages for inverse condemnation. Irwin Brenner, personal representative of the estate of Celia Brenner, appeals from an order granting summary judgment of dismissal in favor of the Port of Bellingham (the Port).

Brenner contends that the summons by publication obtained by the Port in 1968 was defective, that the Port therefore failed to obtain jurisdiction over Brenner, that the judgment of condemnation therefore was void, and the trial court accordingly erred in failing to grant summary judgment to Brenner and in granting the Port summary judgment of dismissal.

The Port contends that the summary judgment entered below is justified on any one of three grounds: (1) that there was no defect in its summons by publication in 1968; (2) that if there was a defect, it was merely an "irregularity" rendering the judgment voidable under CR 60(b); or (3) even if the defect rendered the judgment void, the trial court correctly ruled that Brenner had delayed unreasonably in asserting her claim, and therefore dismissal was proper.

In 1917, Philip Brenner acquired title to an undivided one–half interest in an undeveloped lot in Bellingham. By 1968, the property had passed to Celia Brenner. Celia's son, Irwin, took responsibility for paying the taxes on the property. From 1960 to 1970, records of the Whatcom County Treasurer and Assessor showed that taxes had been timely and continuously paid on this parcel and listed Philip Brenner as the owner and his address as 2326 First Avenue, Seattle, Washington. This address was the Washington Paper Company, operated until 1971 by Irwin.

In 1968, the Port set out to condemn the property. A preliminary title report was furnished to the Port. The title report identified Philip Brenner as the owner of record. The report contained the following statement: "Note: General taxes for the year 1968 in the sum of $1.20, have been paid in full."

Although the title report showed Philip Brenner as the owner of record, the attorney for the Port initially filed the action (June 14, 1968) against Irwin Brenner. The petition stated that the respondents, who included Irwin, "are shown, according to the public records of this county, as owners in fee simple." The Port amended its pleadings on July 12, 1968, substituting Philip for Irwin. The amended pleading stated "said interest being held of record by the respondent [Philip] Brenner."

On September 9, 1968, the Port's attorney moved for an order authorizing service by publication upon the "unknown heirs" of Philip Brenner. The affidavit filed in support of service by publication stated:

> That while the record title of said property is in the name of Philip Brenner, your affiant is informed and believes that Philip Brenner has passed away, as has his widow, Rachel Brenner. Your affiant has no knowledge of probate proceedings on the estates of either Philip Brenner or Rachel Brenner and has no knowledge with respect to the disposition of said property or with respect to the heirs of Philip and Rachel Brenner. That under the circumstances as herein set forth, service of process on said heirs, if there be any, is impossible except by service by publication as authorized under RCW 4.28.130 and 4.28.140. It is believed that the heirs of Philip and Rachel Brenner are proper parties to this action and that the names and residences of such heirs cannot be ascertained with reasonable diligence.

The court granted the motion, and authorized service by publication, directed to "Philip Brenner or to the executor of the estate of Philip Brenner and to his unknown heirs" in September of 1968. No one responded, and the condemnation action proceeded to final judgment on June 12, 1969, vesting title to the property in the Port.

In October 1982, Celia and Irwin decided to take a look at the property during a drive to Bellingham. They observed that the unimproved tideland property had been filled and that substantial development had occurred on it.

Three years later, on July 9, 1985, Celia filed a complaint for damages alleging that the Port had inversely condemned her interest in the property and that the Port had deprived her of her constitutional right to notice and just compensation. The Port in its answer denied liability and brought in as third party defendants the law firm which had represented the Port in the 1968 condemnation action.

Celia moved for a summary judgment vacating the 1968 judgment of condemnation. She contended that the Port failed to comply with RCW 4.28.140 in obtaining service by publication. The trial court denied this motion, ruling that the Port's error in obtaining service was an "irregularity" under CR 60(b)(1), and therefore voidable rather than void under CR 60(b)(5). It then conducted an evidentiary hearing to determine whether Celia acted reasonably as required by CR 60(b)[1] in not filing her action until July 9, 1985. The trial court ruled that she had not, and dismissed her claim for damages. Celia Brenner died in 1987. Her son and personal representative, Irwin Brenner, has been substituted as plaintiff/appellant.

The issues on appeal are: (1) whether the 1968 judgment was voidable or void and (2) whether the motion to vacate the judgment was barred because of delay in filing.

■ Service of a summons by publication is authorized in certain instances. RCW 4.28.140 provides:

> Upon presenting an affidavit to the court or judge, showing to his satisfaction that the heirs of such deceased person are proper parties to the action, and that their names and residences cannot with use of reasonable diligence be ascertained, such court or judge may grant an order that service of the summons in such actions be made on such "Unknown heirs" by publication thereof in the same manner as in actions against nonresident defendants.

---

[1] "The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment . . . was entered . . ." CR 60(b).

In order for jurisdiction to attach when a summons is served by publication, there must be strict compliance with the statute. *Kent v. Lee,* 52 Wn. App. 576, 579, 762 P.2d 24 (1988); *Longview Fibre Co. v. Stokes,* 52 Wn. App. 241, 244, 758 P.2d 1006 (1988); *Painter v. Olney,* 37 Wn. App. 424, 427, 680 P.2d 1066, *review denied,* 102 Wn.2d 1002 (1984). When there is a recital in a default judgment that proper service of process has occurred, a presumption of jurisdiction arises, but such presumption may be overcome by showing that publication was based on a defective affidavit. *Burns v. Stolze,* 111 Wash. 392, 395–96, 191 P. 642 (1920); *Longview Fibre Co.,* 52 Wn. App. at 244.

In our case, Brenner, in moving for an order of summary judgment, attacked the sufficiency of the Port's search, contending that it did not comply with RCW 4.28.140.

Whether there has been strict compliance with the publication statute so as to confer jurisdiction by publication of summons has been determined on a case–by–case basis. However, a central theme emerging from the cases appears to be that while not all conceivable means of personal service have to be exhausted before service by publication is authorized, there must have been an honest and "reasonable effort" to find the defendant.

*Longview Fibre Co.,* 52 Wn. App. at 245; *accord, Martin v. Meier,* 111 Wn.2d 471, 481, 760 P.2d 925 (1988).[2]

In support of her motion to vacate the decree of condemnation, Celia produced evidence that the Port: (1) knew the property taxes for 1968 had been paid; (2) could have found the taxpayer's address by checking the county tax rolls; and (3) initially filed the action against Irwin Brenner, Philip's grandson. This evidence reasonably suggests that Philip's heirs might have been found if the Port had followed up on the information it possessed.

---

[2]*Martin v. Meier, supra,* construed the term "due diligence" in the context of RCW 46.64.040, a constructive notice statute. RCW 4.28.140 requires the plaintiff to employ "reasonable diligence" to locate the names and residences of the unknown heirs. "Due diligence" and "reasonable diligence" are synonymous. *See* Black's Law Dictionary 411–12 (5th ed. 1979). Therefore, cases analyzing RCW 46.64.040 are apposite here.

Washington courts have held that where a plaintiff possesses information that might reasonably assist in determining a defendant's whereabouts, but fails to follow up on that information, the plaintiff has not made the honest and reasonable effort necessary to allow for service by publication. *Martin,* 111 Wn.2d at 481–82; *see, e.g., Parkash v. Perry,* 40 Wn. App. 849, 700 P.2d 1201 (1985) (court held plaintiff failed to exercise diligence in effort to find defendant where none of the affidavits in support of publication indicated whether the process server or plaintiff checked the information contained in the accident report, and the information appended to the return of service was not investigated); *Painter v. Olney, supra* (plaintiff's failure to make a sufficient effort to locate the defendants after process server went to wrong address, despite possessing additional information regarding defendants' whereabouts, rendered service by publication inappropriate).

The Port contends, however, that its search was sufficient and that Celia's contention that its search was inadequate is refuted by *Chase v. Carney,* 199 Wash. 99, 90 P.2d 286 (1939). *Chase* is no help to the Port because there, the publishing party filed an affidavit showing that it had conducted a reasonable search in that it examined the telephone directory and the city directory, and interviewed the mortgagors in a search for the necessary party.

Brenner met her burden of presenting factual evidence establishing that the affidavit upon which service by publication was predicated does not comply with the statute. The burden then shifted to the Port to produce evidence that a reasonable search was made. *Graves v. P.J. Taggares Co.,* 94 Wn.2d 298, 302, 616 P.2d 1223 (1980).

The Port did not carry its burden by producing such evidence. It relied on the affidavit it originally filed in 1968, which contains nothing more than a conclusory statement that "the names and residences of [Philip Brenner's] heirs cannot be ascertained with reasonable diligence." Without a recitation of specific facts upon which this conclusion was

based, a reasonable trier of fact can reach but one conclusion from Celia's evidence: the Port did not exercise reasonable diligence in its effort to locate and identify Philip's heirs. Because the Port did not strictly comply with the requirements of RCW 4.28.140, the trial court did not have jurisdiction over Celia when it entered the 1969 order condemning her one–half interest in the Bellingham property. *Longview Fibre Co.*, 52 Wn. App. at 245.

■ A default judgment entered without valid service is void and may be vacated when the want of jurisdiction is established, regardless of the passage of time. *John Hancock Mut. Life Ins. Co. v. Gooley*, 196 Wash. 357, 370–71, 83 P.2d 221, 118 A.L.R. 1484 (1938); *In re Marriage of Markowski*, 50 Wn. App. 633, 635, 749 P.2d 754 (1988) (motions to vacate under CR 60(b)(5)[3] are not barred by the "reasonable time" or the 1–year requirement of CR 60(b), but may be brought at any time after entry of the judgment). Courts have a nondiscretionary duty to vacate void judgments. *Markowski*, 50 Wn. App. at 635. Consequently, the judgment of the lower court is reversed, and the cause is remanded with directions to the trial court to vacate the 1969 judgment of condemnation.

WEBSTER, J., concurs.[4]

---

[3]CR 60(b)(5) provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

". . .

"(5) The judgment is void[.]"

[4]Judge Ward Williams signed this opinion prior to his retirement on January 8, 1989.