[No. 15611-7-III.　Division Three.　October 16, 1997.]

MARGARET G. DOBBINS, *Respondent*, v. JOSE LUIS MENDOZA, *Defendant*, MONA DEJESUS MENDOZA, *Appellant*.

*David B. Trujillo* of *Peters & Fowler, Inc., P.S.*, for appellant.

*Clinton J. Henderson* of *Henderson & Grow*, for respondent.

SCHULTHEIS, A.C.J. — In this action to foreclose a real estate contract, a default judgment was entered after service of process by publication. The court initially vacated the default order and judgment for lack of due diligence in locating the defendants, then reversed itself on reconsideration and reinstated the default order and judgment. Maria DeJesus Mendoza contends the judgment is void because Margaret Dobbins did not use readily available public information in county tax and irrigation district records that could have made personal service possible. We agree and reverse.

By real estate contract executed October 20, 1972, Robert and Margaret Dobbins sold the property at issue to James and Ella Marie Dixon. On August 10, 1983, the Dixons conveyed their interest to Antonio Mendoza by

purchaser's assignment of contract and quitclaim deed. On November 4, 1983, Antonio conveyed his interest to Jose Luis Mendoza (his brother) and Mona or Maria DeJesus Mendoza,[1] husband and wife, by purchaser's assignment of contract and quitclaim deed.

Mr. Dobbins died in October 1973 and Mrs. Dobbins has lived in Potlatch, Idaho, since 1985. Mr. and Mrs. Mendoza lived in Dinuba, California, but worked summers in Washington. Mr. Mendoza died in March 1990 and Mrs. Mendoza has not been back to Washington. She still lives in Dinuba. Contract payments were made to an escrow account for the Dobbinses. Mrs. Dobbins's bank advised her by letter in July 1993, and again in October 1993, that no payments had been received since March 1990. On the advice of her family and her attorney, Clinton Henderson, Mrs. Dobbins decided to foreclose the real estate contract as a mortgage, and quiet title so she could sell the property. On October 19, 1993, Mr. Henderson filed a summons and complaint naming Mrs. Dobbins as plaintiff and Jose Luis Mendoza and Mona DeJesus Mendoza, husband and wife, as defendants.

On November 18 Mr. Henderson moved for service by publication under RCW 4.28.100(5) and (6).[2] In his supporting declaration, Mr. Henderson states personal service of

---

[1] All three conveyances were recorded, and the original Dobbins/Dixon contract was apparently appended to the complaint, but only the Dixon/Antonio Mendoza document is included in the record on appeal. Mrs. Dobbins's attorney asserts the wife's name on the Mendoza/Mendoza document is Mona, but Mrs. Mendoza's attorney and real estate agent Randy Tucker, in his affidavit, assert the wife's name on the document is Maria. Tax records list Jose L. and Maria Mendoza.

[2] RCW 4.28.100 provides:

"When the defendant cannot be found within the state, and upon the filing of an affidavit of the plaintiff, his agent, or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state, or cannot be found therein, and that he has deposited a copy of the summons . . . and complaint in the post office, directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons, by the plaintiff or his attorney in any of the following cases:

". . . .

a copy of the summons and complaint was made by Legal Couriers, Inc., on

> one Javier Mendoza, the alleged brother of Jose Luis Mendoza; however, a person claiming to be Jose Luis Mendoza called [Mr. Henderson's office] within a few hours after the service of process had been effected and stated that he could not be the person named in the complaint, as he had never been a party to a real estate contract for the subject real estate, and that he was not a married person. Therefore, it is unknown and uncertain whether or not service of process has been effected upon the proper party to this lawsuit, and the legal process firm has no knowledge of any other place where service can be effected on the Defendants, or either of them.

> 4. Therefore, I have no knowledge of the present whereabouts or location of the Defendants named in the complaint, despite diligent inquiry.

> 5. As the attorney for the Plaintiff, I have made extensive inquiry as to the whereabouts and/or addresses for the named Defendants.

The court granted the motion and ordered service by publication. On February 16, 1994, Mr. Henderson sought and obtained an order of default and judgment against the defendants.

In August 1995 Mrs. Dobbins sold a substantial part of the property at issue to Carlos Martinez on contract for $71,500, with $11,500 down.

On November 17, 1995, Mrs. Mendoza moved to vacate the judgment under CR 60(b)(5) for lack of personal jurisdiction based on failure to comply with the requirements for service of process by publication. She argued the attorney's supporting declaration was inadequate on its face because it failed to set forth facts showing a reasonably

"(5) When the subject of the action is real or personal property in this state, and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly, or partly, in excluding the defendant from any interest or lien therein;

"(6) When the action is to foreclose, satisfy, or redeem from a mortgage, or to enforce a lien of any kind on real estate in the county where the action is brought, or satisfy or redeem from the same."

diligent search. But because the default order and judgment recite service sufficient to confer jurisdiction, Mrs. Mendoza conceded the court would have to conduct a factual inquiry to determine whether due diligence was actually exercised before service was effected by publication. *Brennan v. Hurt*, 59 Wn. App. 315, 318-19, 796 P.2d 786 (1990), *review denied*, 116 Wn.2d 1002 (1991). She contended it was not, because the plaintiff and the plaintiff's attorney had in their possession information that would have assisted them in properly naming Mrs. Mendoza as a defendant and in locating her had they simply utilized it.

Mr. Henderson opposed the motion and, on December 15, 1995, filed supplemental declarations from himself, Mrs. Dobbins's grandson Robert Longfellow, process server Dennis Copeland, and the escrow agent handling the post-judgment sale of the property, Paul Hart.[3] In his declaration, Mr. Henderson added that he obtained a title report, which "showed that Jose Luis Mendoza and Mona DeJesus Mendoza, husband and wife, were the purchasers/assignees of a real estate contract between Margaret Dobbins, as seller, and James U. Dixon and Ella Marie Dixon, as purchasers." Mr. Henderson asked Robert Longfellow to find out if anyone was living on the property, and, if so, if they knew the whereabouts of Mr. and Mrs. Mendoza. Mr. Longfellow was unsuccessful, so Mr. Henderson hired Legal Couriers, Inc., which served Javier Mendoza. After receiving the telephone call from Javier's brother, Jose Luis Mendoza, Mr. Henderson states he "next initiated telephone calls to various government officials in Yakima County, hoping to obtain an address for Mr. and Mrs. Mendoza." He then moved for service by publication.

Mr. Longfellow, by affidavit, stated he knew when the lawsuit was commenced it would be virtually impossible

---

[3]In his affidavit, Mr. Hart states the commitment for title insurance in the Dobbins/Martinez sale does not disclose any interest in the property claimed by Jose Luis and Mona DeJesus Mendoza. Because judgment had already been entered, that fact is not surprising. It is also irrelevant.

to locate the Mendozas, because he had inquired as to their whereabouts when he learned payments had ceased. He stated he went to the property and encountered language problems with the man and young woman who were there. The woman indicated they knew nothing about the Mendozas, they paid their rent to a man named Tovias Magana; she gave Mr. Longfellow his telephone number. Mr. Longfellow stated he tried numerous times to reach Mr. Magana by telephone, but was unsuccessful.

Mr. Copeland, in his affidavit of service, stated he found several residents at the property address he was given, but they spoke little English and provided little information. He was told the landlord, who lived in Grandview, came by and picked up the rent once a month. Mr. Copeland located a Jose Mendoza residence in Grandview, verified that he lived there, and served Jose's brother Javier. Mr. Copeland concludes his affidavit by stating: "In my search I used the St. of Washington, all local collection agencies, utilities, neighbors, and other sources available to me. This was a difficult service because of the lack of information and cooperation at the original address."

At oral argument on December 22, 1995, Mrs. Mendoza's attorney related how he contacted the Yakima County Treasurer, provided the legal description of the property, and obtained a copy of the tax record showing assessments were sent to Jose L. and Maria Mendoza, 1003 Viall Road, Grandview, Washington 98930 (which is the address of their property manager, Mr. Magana, and of Jose's brother Antonio when he is working in the area). He argued the failure to use the address in the tax records to try to locate Mrs. Mendoza constituted a lack of due diligence, as a matter of law, under *Brenner v. Port of Bellingham*, 53 Wn. App. 182, 186-87, 765 P.2d 1333 (1989). The court agreed, granted Mrs. Mendoza's motion and vacated the default judgment. Orally, the court ruled:

> In this case, considering the case law of the state, a complete diligent search should include a review of the tax rolls which indeed would have revealed a last known address.

Even though Mendoza was no longer living at that address, it was a last known address. As it turned out, whether or not mail would have gotten forwarded, it was a last known address and publicly available on the tax rolls with respect to this particular property.

I am persuaded plaintiff's counsel operated in good faith as did Mr. Longfellow. I am persuaded as a matter of law the diligence required in order to have service by publication was not met.

Both parties moved for reconsideration. Mrs. Mendoza asked the court to increase the amount of the supersedeas bond from $7,500 to $71,500, while Mrs. Dobbins sought reversal, and reinstatement of the default judgment. Mrs. Mendoza introduced the county tax records shown to the court in the previous hearing and pointed out Mrs. Dobbins had actually obtained information from the tax records since the complaint alleged delinquent property taxes in the sum of $661.60 for the year 1993, and the findings of fact included that information. Thus, Mrs. Dobbins clearly had the Mendozas' address and Mrs. Mendoza's correct name available to them, but failed to follow that lead.

Mrs. Dobbins filed an affidavit by Randy Tucker, a Realtor involved in the postjudgment Dobbins/Martinez transaction. Before he listed the property, he had information showing the last owners of record were Jose Luis Mendoza and Maria DeJesus Mendoza, husband and wife. He ordered a title report in May 1995 to verify the foreclosure had been completed and Margaret Dobbins was the owner. After that time, his firm made contact with tenants who spoke only Spanish and, ultimately, with Mr. Magana. According to Mr. Tucker "Mr. Magana indicated he was collecting the [rent] money, but that he did not know how to contact anybody."

After oral argument on January 19, 1996, the court granted Mrs. Dobbins's motion, reversed its earlier decision and reinstated the default judgment. The court explained:

The court's ruling had been based primarily upon the rationale in the case of *Brenner vs. Port of Bellingham* at 53 Wn. App. 182. I had been persuaded at the first hearing that since the plaintiff had not checked the tax records, and tax records would have revealed an address for Mrs. Mendoza, that due diligence had not been shown.

On reconsideration, I am persuaded that due diligence has been shown despite the fact that tax records were not used for an address and persuaded of that primarily because although it would have revealed an address it would not have revealed the actual address.

It is undisputed that Ms. Mendoza did not live at the address shown in the tax records. It is undisputed that someone on her behalf, a Mr. Magana, would have been available at that address and is ostensibly a property manager but he is not the defendant in this case. The testimony of Mr. Magana and his declarations on behalf of Ms. Mendoza should be considered by the court as self-serving or speculative when he says had he received such a letter he would have forwarded it on.

On the issue of service, the whole process or procedure in affecting service is to find the person themself [*sic*]. Ms. Mendoza did not live at the address listed in the tax records.

Considering the totality of the circumstances of what efforts were undertaken, including going to the property, just subsequent use of a process server, despite the fact that there was advice by the person who was served that they had served the wrong person, under the totality of the circumstances I am persuaded that due diligence was exercised in the attempt to serve prior to service by publication.

Mrs. Mendoza moved for reconsideration. The court denied the motion, but allowed additional supplementation of the record. Among the documents filed by Mrs. Mendoza are Sunnyside Valley Irrigation District records showing assessments for 1992 through 1995 were sent to Tovias A. Magana, 1003 Viall Road, Grandview, Washington 98930, and the U.S. Bank 1990 escrow payment record for Mrs. Dobbins's account listing as payor Antonio Men-

doza, 1003 Beall Road, Grandview, Washington 98930. Mrs. Mendoza now appeals to this court.

 First and basic to any litigation is jurisdiction, and first and basic to jurisdiction is service of process. *Scott v. Goldman*, 82 Wn. App. 1, 6, 917 P.2d 131, *review denied*, 130 Wn.2d 1004 (1996). When a court lacks in personam jurisdiction over a party, any judgment entered against that party is void. *Id.* at 6. Because courts have a mandatory, nondiscretionary duty to vacate void judgments, a trial court's decision to grant or deny a CR 60(b) motion to vacate a default judgment for want of jurisdiction is reviewed de novo. *Id.* at 6; *Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 323, 877 P.2d 724 (1994); *Brickum Inv. Co. v. Vernham Corp.*, 46 Wn. App. 517, 520, 731 P.2d 533 (1987).

 Service by publication is in derogation of the common law and cannot be used when personal service is possible. 14 LEWIS H. ORLAND AND KARL B. TEGLAND, WASHINGTON PRACTICE, TRIAL PRACTICE CIVIL § 122 (5th ed. 1996). Therefore, strict compliance with the statute authorizing service by publication is required. *Brennan v. Hurt*, 59 Wn. App. 315, 317, 796 P.2d 786 (1990), *review denied*, 116 Wn.2d 1002 (1991); *Longview Fibre Co. v. Stokes*, 52 Wn. App. 241, 244, 758 P.2d 1006 (1988). The issue before a court on a postjudgment CR 60(b) motion is not simply whether the affidavit required by RCW 4.28.100 is sufficient, but whether the plaintiff, in fact, made an honest and reasonable effort to locate the defendant before seeking service by publication. *Brennan*, 59 Wn. App. at 319.

 For the reasons stated below, we agree with Mrs. Mendoza that the trial court's original ruling was correct; Mrs. Dobbins did not conduct an adequate search for Jose Luis and Maria DeJesus Mendoza before resorting to service by publication. More fundamentally, however, there is no satisfactory explanation for misnaming Mrs. Mendoza "Mona" instead of "Maria." Due process requires that notice be reasonably calculated to inform a party of

the pendency of proceedings affecting her or her property and provide a meaningful opportunity to participate. *Rosholt v. County of Snohomish*, 19 Wn. App. 300, 306, 575 P.2d 726 (1978). Absolute accuracy in spelling names is not required in legal proceedings, but in cases of constructive service of process by publication, where the name is the principal means of identifying the person concerned, there must not be so material a change as to be misleading. *Grannis v. Ordean*, 234 U.S. 385, 395-96, 34 S. Ct. 779, 58 L. Ed. 1363 (1914); *Kelly v. Kuhnhausen*, 51 Wash. 193, 195-96, 98 P. 603 (1908); *Rosholt*, 19 Wn. App. at 306-07; accord *In re Esparza*, 118 Wn.2d 251, 259-60, 821 P.2d 1216 (1992).

The question is whether the summons as published[4] would likely have alerted Maria DeJesus Mendoza or someone who knew her of the pendency of the lawsuit affecting her property. Mendoza is a fairly common name—there are eight Jose Mendozas listed in the copy of the relevant page of the U.S. West Directory for Yakima Valley contained in the Clerk's Papers, two listings for Maria and three husband/wife listings with Maria as the wife. There are no listings with the name Mona. It would be straining the rule requiring strict compliance with the statute authorizing service by publication to ignore an error so likely to mislead and prejudice. *D'Autremont v. Anderson Iron Co.*, 104 Minn. 165, 116 N.W. 357, 359 (1908). We find the court never obtained jurisdiction over Maria DeJesus Mendoza, who was not named or served in this lawsuit.

■ As for the issue of due diligence, the original affidavit supporting the motion for service by publication states that a process server located and substitute-served the wrong person, the attorney does not know the whereabouts of the defendants "despite diligent inquiry," and that the attorney "made extensive inquiry as to the whereabouts and/or addresses for the named Defendants." The

---

[4]The published summons is not in the record.

affidavit is deficient because it does not set forth facts showing a reasonably diligent search, it simply asserts one was conducted. *Brennan*, 59 Wn. App. at 317; *see In re Marriage of Logg*, 74 Wn. App. 781, 785, 875 P.2d 647 (1994).

The essential question, therefore, is whether the supplemental affidavits produced by Mrs. Dobbins cured the defect by showing that a proper basis for service by publication in fact existed. *Brennan*, 59 Wn. App. at 318-19. Stripped to their essentials, the affidavits show attorney Henderson asked Mr. Longfellow to go to the property to find the defendants. He could not, so Mr. Henderson hired a process server, who served the wrong person. Mr. Henderson states he "initiated" calls to various government officials in Yakima, but we do not know what that means. (Did he call? Did he ask someone to call? Was anyone actually contacted? If so, who?) Next, Mr. Longfellow went to the property, learned Mr. Magana collected rent and obtained a telephone number for him. He tried numerous times to reach Mr. Magana by telephone, but was unsuccessful. Finally, Mr. Copeland went to the property and learned the landlord lived in Grandview and came each month to collect rent. He found the residence of a Jose Mendoza in Grandview and substitute-served process there. He states he used various sources, but does not specify what records he checked. The affidavits of Mr. Tucker and Mr. Hart are irrelevant because those gentlemen were not involved until after the default judgment was entered and the property was put on the market.

RCW 4.28.100 requires that a copy of the summons and complaint be mailed to the defendants at their place of residence (unless it is not known). Tax records readily available to the plaintiff show the defendants' names and an address for them. At a minimum, we believe due diligence would require that personal service be attempted there, and that a copy of the summons and complaint be mailed to the Mendozas at that address if personal service could not be effected there. The com-

plaint, and the findings and conclusions entered with the default judgment, list five judgments allegedly rendered against the defendant Jose, which became liens against the property. None of them are in the record, though case numbers and judgment numbers are specified. Presumably, there is information in those cases regarding the identity and whereabouts of the Jose Mendoza against whom the judgments were taken, but the attorney's affidavit is completely silent on the matter. The complaint, and the findings and conclusions, also refer specifically to the escrow account, which provides an address for Antonio Mendoza, known to the plaintiff as the Mendozas' assignor, yet no effort was made to contact him to determine whether he knew their whereabouts. Under these circumstances, the information provided to the trial court does not establish an honest and "reasonable effort" to find the defendants. *See Brenner*, 53 Wn. App. at 186-88; *Longview Fibre Co.*, 52 Wn. App. at 245; *Painter v. Olney*, 37 Wn. App. 424, 426-27, 680 P.2d 1066, *review denied*, 102 Wn.2d 1002 (1984); *contrast Brennan*, 59 Wn. App. at 319.

Both parties claim a right to attorney fees under the original real estate contract, depending upon who prevails, and each apparently concedes the prevailing party has a right to fees. But because the contract is not in the record before us, we cannot determine whether an award to Mrs. Mendoza at this stage is warranted, or instead, premature. Therefore, we leave the issue of appropriate attorney fees for the trial court to decide on remand.

Reversed and remanded for further proceedings consistent with this opinion.

BROWN, J., and THOMPSON, J. Pro Tem., concur.