COURT OF APPEALS DIV 1
2014 MAR 10 AH 9: 52



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GAIL K. DIAMOND, | ) | NO. 69400-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JONATHAN RICHMOND, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 10, 2014 |
| | ) | |

LAU, J. — This case involves substitute service of process under the nonresident motorist statute, RCW 46.64.040. Jonathan Richmond appeals the trial court's denial of his motion to dismiss Gail Diamond's personal injury lawsuit for lack of personal jurisdiction. He contends Diamond (1) failed to exercise due diligence to identify his addresses and to attempt personal service of the summons or process at all those addresses as required under the nonresident motorist statute and (2) failed to send to him at his last known address the notice of service on the secretary of state and other documents required by the statute. Richmond also claims Diamond failed to meet several additional statutory requirements. Because no material fact issues exist that under RCW 46.64.040's requirements Diamond failed to exercise due diligence to

69400-6-I/2

identify Richmond's addresses, to attempt personal service at those addresses, and to send notice and other required documents to his last known address, the trial court lacked personal jurisdiction as a matter of law. We reverse and remand with instructions to dismiss this lawsuit with prejudice.

FACTS

On July 15, 2008, Richmond's rental vehicle struck Diamond's vehicle, causing property damage and personal injuries. Richmond's passenger, Umesh Phuyal, sustained no injuries. Richmond and Diamond exchanged e-mail addresses. A police officer witnessed the accident, investigated, issued a traffic infraction notice to Richmond for improper lane travel and driving without vehicle insurance, and later prepared a traffic accident collision report. Richmond presented a California driver's license bearing a California address to the police officer. The officer recorded the California address on the accident report and traffic infraction notice.[1]

Richmond is a citizen of the United Kingdom. At the time of the accident, he lived and worked in the Republic of Mauritius, an island country in the Indian Ocean. He has never been a Washington resident. He stayed with friends living at the California address from time to time. The accident report lists Richmond's Massachusetts telephone number with a 617 area code, date of birth, and the rental

_____

[1] In his July 31, 2012 declaration, Richmond explained why the police report contained the California address:
> I did not give false information to the police investigating the July 16, 2008 collision. I did not tell the police or anyone else that I resided in California at the time of that collision. I assume the California address appears on the police report because it was on my driver's license, and that the reporting officer simply copied the address. The officer did not ask me where I resided at the time.

Diamond submitted no evidence to rebut this explanation.

-2-

vehicle company, Fox Rent-A-Car in SeaTac.  The accident report also identifies

Umesh Phuyal, by name, address, telephone number, and date of birth.

At the accident scene, Richmond told Diamond that he lived in Mauritius, not at

the address listed on his California driver's license.  When he called her later to see how

she was doing, he told her again that he lived in Mauritius.  He also told her he was

returning to Mauritius and gave her his telephone number.  Diamond acknowledged

talking with Richmond at the accident scene and on the telephone in 2008.  She

testified in her declaration, "From my conversations with Mr. Richmond, I understood

that Mr. Richmond did not live within the United States but that he lived in a foreign

country at the time of the collision" and "I seem to remember that he had a job in

Mauritius . . . ."  In an e-mail exchange with Richmond soon after the accident, she

acknowledged that Mauritius was Richmond's "home" and that he gave her a telephone

number where he could be reached, "(617) 395-4360."[2]  She knew the number "is

associated with telephones located in the Boston, Massachusetts area."  This is the

same telephone number listed on the accident report.

In responding to the traffic infraction notice, Richmond requested a mitigation

hearing.  He wrote on the back of the notice his full name, including middle initials,

Mauritius residence address, two telephone numbers (the 617 Massachusetts area

code number noted above and a 230 Mauritius country code number), and his e-mail

address.[3]  Next to the Massachusetts number he wrote "US msg" indicating a United

---

[2] This United States telephone number "rings at [Richmond's] home."

[3] Richmond wrote in this contact information under the preprinted section
entitled, "My mailing address is . . . ."

States message contact number. Next to the Mauritius number he wrote "cell." He mailed the hearing request to SeaTac Municipal Court. In subsequent correspondence with the court about the mitigation hearing, Richmond provided his job title and Mauritius address, telephone numbers, and his e-mail address.

Richmond also corresponded by e-mail with Diamond's insurer, Progressive Insurance, and Fox Rent-A-Car over liability and coverage issues while he lived in Mauritius. He advised both companies of his residence in Mauritius, employer, job title, employment address, Massachusetts and Mauritius telephone numbers, e-mail address, and business web site address.[4] Diamond's attorney, Mark Anderson, had a copy of Richmond's Fox Rent-A-Car contract. The contract identified the renter as "Jonathan Richmond" with California driver's license number C2632939 and expiration date of January 19, 2012.

Richmond's resume was available on the Internet during the limitations period. It is currently the third item that appears when his name is entered into the Google search engine.[5] Richmond's resume lists a Massachusetts address where he received mail and a Bangladesh address where he lived when the lawsuit commenced. It also lists the same Massachusetts telephone number and e-mail he used and provided to Diamond, Progressive, Fox Rent-A-Car, SeaTac Municipal Court, and the investigating police officer (telephone only). The resume also shows his business web site

---

[4] According to his biographical note (searchable on Google), Richmond is a noted national urban transportation expert.

[5] As noted above, his complete name, including middle initials and date of birth, are contained in the traffic infraction notice and accident report.

address—the same web address he provided to Progressive and Fox Rent-A-Car representatives.

Three years after the accident, on July 11, 2011, Diamond filed this personal injury lawsuit, alleging negligence and seeking damages for medical expenses and lost wages. By that time, Richmond was living in Bangladesh. Under RCW 4.16.170's 90-day tolling period, Diamond had until October 9, 2011, to effect proper service of process without violating the three-year statute of limitations.

On September 9, 2011, attorney Anderson sought and obtained an order from the superior court permitting service of process by publication under RCW 4.28.100 and .110. To the motion for publication, Anderson attached his declaration stating that he "researched internet telephone directories," "conducted online search using the Accurint legal databases," and "contacted the Department of Homeland Security" in an effort to locate Richmond for personal service or service by mail, but he was unsuccessful. Anderson's declaration also stated:

> The police report that was generated in this personal injury matter in July 2008 did contain an address and other contact information for defendant Jonathan Richmond. However, the results of my research indicate that defendant probably provided a falsified address and other contact information, in that I could not confirm that a Jonathan Richmond ever used that address in the past or was associated with the telephone number given. As such, I do not know defendants' address.

The declaration lacks any factual details to support Anderson's conclusion that Richmond likely provided a false address and contact information. Diamond never published the required notice.

Diamond hired a professional process server to serve Richmond at the California address listed on the accident report. When the process server attempted service on

September 17, someone at the house told him that Richmond was not in "and will not be there for weeks." (Capitalization omitted.) Between September 24 and October 2, the process server attempted to serve Richmond at the California address five more times without success.

On October 5, 4 days before the 90-day tolling period's expiration, attorney Anderson talked to Richmond by telephone. Richmond declined to disclose his location but indicated that he had lived in Mauritius, Bangladesh, and Vietnam since the accident.[6] He told Anderson that he planned to be in California "sometime in the upcoming weeks" and then visit family in London for the holidays "and then return to Vietnam in January or February of 2012." After the telephone conversation ended, Anderson dialed *69 and learned that Richmond had called him from a Boston, Massachusetts number with a 617 area code. No evidence in the record indicates Anderson followed up on that information.

On October 6, Diamond served the Washington secretary of state under Washington's nonresident motorist statute, RCW 46.64.040, asserting that after a diligent search, she was unable to locate Richmond for personal service. In the affidavit of attempted service, attorney Anderson stated that he tried to locate Richmond by researching Internet telephone directories, conducting an on-line search using the Accurint legal databases, and contacting the Department of Homeland Security. In the

---

[6] In his declaration, Anderson stated specifically: "Mr. Richmond told me that, after his job in Mauritius ended in 2008, he tried to get work in the United States, but was unsuccessful. Mr. Richmond was out of work for eight months before he moved to Bangladesh, where he lived and worked until leaving in December 2010. He told me that he then went on a lecture tour in the United States in March and April of 2011 and then went back to Asia, and was negotiating a contract for work in Vietnam."

affidavit of compliance, Anderson stated that he "served a true and correct copy of the Summons & Complaint in this action, accompanied by the appropriate fee, upon the Washington Secretary of State . . . ."

On July 31, 2012, Richmond moved to dismiss Diamond's lawsuit for lack of personal jurisdiction under CR 12(h) and CR 56(c). He argued that Diamond failed to comply with RCW 46.64.040's requirements because (1) she failed to send two copies of the required documentation to the secretary of state and did not prove by affidavit that such copies were sent, (2) she failed to prove payment of the required fee to the secretary of state, and (3) she failed to use due diligence to personally serve Richmond or locate his last known address. In response, attorney Anderson provided a statement from the secretary of state indicating that the secretary received "Summons/Complaint and other legal documents" and then sent a "duplicated copy" by certified mail to Richmond at an unspecified "last known address as supplied by the plaintiff." Anderson also filed with the trial court, and allegedly mailed to the California address, a notice of service to nonresident motorist stating that counsel left two copies of the summons and complaint with the secretary. Also in response to Richmond's motion to dismiss, Anderson served an amended affidavit of compliance stating that he left "two true and correct copies of the Summons & Complaint in this action, accompanied by a check in the amount of $50.00 as the appropriate fee established by the Washington Secretary of State by rule . . . ," with the secretary.

The matter was initially heard on August 31, 2012. The court ordered supplemental briefing regarding whether filing an amended affidavit of compliance cures alleged defects in the original affidavit. The parties submitted additional briefing. On

September 14, the trial court denied Richmond's motion to dismiss. We granted his

petition for discretionary review.

## ANALYSIS

Richmond contends the trial court erred when it denied his motion because

Diamond failed to effect substitute service under RCW 46.64.040, the nonresident

motorist statute.

### Personal Jurisdiction and the Nonresident Motorist Statute (RCW 46.64.040)

"First and basic to personal jurisdiction is service of process."[7] Pascua v. Heil,

126 Wn. App. 520, 526, 108 P.3d 1253 (2005); see also Woodruff v. Spence, 76 Wn.

App. 207, 209-10, 883 P.2d 936 (1994). Plaintiff carries the initial burden to make a

prima facie showing of proper service of process. Witt v. Port of Olympia, 126 Wn. App.

752, 757, 109 P.3d 489 (2005). Though personal service of a summons is preferred,

the nonresident motorist statute permits substitute service on the secretary of state

where the defendant is a nonresident or a resident who has left the state. RCW

46.64.040 provides in relevant part:

> Service of such summons or process shall be made by leaving two copies
> thereof with a fee established by the secretary of state by rule with the secretary
> of state of the state of Washington, or at the secretary of state's office, and such
> service shall be sufficient and valid personal service upon said resident or
> nonresident: PROVIDED, That notice of such service and a copy of the
> summons or process is forthwith sent by registered mail with return receipt
> requested, by plaintiff to the defendant at the last known address of the said
> defendant, and the plaintiff's affidavit of compliance herewith are appended to the

---

[7] Due process requires "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Martin v. Meier, 111 Wn.2d 471, 477-78, 760 P.2d 925 (1988) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

process, together with the affidavit of the plaintiff's attorney that the attorney has with due diligence attempted to serve personal process upon the defendant at all addresses known to him or her of defendant and further listing in his or her affidavit the addresses at which he or she attempted to have process served. However, if process is forwarded by registered mail and defendant's endorsed receipt is received and entered as a part of the return of process then the foregoing affidavit of plaintiff's attorney need only show that the defendant received personal delivery by mail: PROVIDED FURTHER, That personal service outside of this state in accordance with the provisions of law relating to personal service of summons outside of this state shall relieve the plaintiff from mailing a copy of the summons or process by registered mail as hereinbefore provided. The secretary of state shall forthwith send one of such copies by mail, postage prepaid, addressed to the defendant at the defendant's address, if known to the secretary of state.

(Emphasis added.) A plaintiff's failure to adhere to the statute's procedures for notifying the defendant that process has been served on the secretary renders service on the secretary a nullity. Omaits v. Raber, 56 Wn. App. 668, 670, 785 P.2d 462 (1990).

Washington courts require a plaintiff to comply with the statute's four-step requirements:

> (1) deliver two copies of the summons to the Secretary of State with the required fee; (2) either personally serve the defendant with a copy of the summons and notice of service on the Secretary or send the same documents by registered mail, return receipt requested, to the defendant's last known address; (3) file an affidavit of compliance with the court; and (4) if the defendant was served by registered mail, file an affidavit of due diligence with the court.

Clay v. Portik, 84 Wn. App. 553, 559, 929 P.2d 1132 (1997). Although Clay's formulation references only filing the required affidavits with the court, the statute also expressly requires the plaintiff to mail the defendant copies of the affidavits of compliance and due diligence. RCW 46.64.040; Keithly v. Sanders, 170 Wn. App. 683, 688-90, 285 P.3d 225 (2012). "As a general rule, statutes providing for constructive or substituted service must be strictly construed as in derogation of the common law." Martin v. Meier, 111 Wn.2d 471, 479, 760 P.2d 925 (1988). RCW 46.64.040 is such a

statute and "its procedures must be strictly adhered to, otherwise jurisdiction is not obtained under this statute." Meier, 111 Wn.2d at 479. The procedures under the statute satisfy due process requirements. Meier, 111 Wn.2d at 476.

In sum, service under the statute is effected by leaving two copies of the summons or process, with the appropriate fee, with the secretary of state accompanied by (1) plaintiff's affidavit that notice of service and a copy of the summons or process have been sent by registered mail with return receipt requested to defendant at the last known address of the defendant and (2) an affidavit of the plaintiff's attorney that the attorney with due diligence attempted to serve personal process on the defendant at all known addresses and list them or attach defendant's signed return receipt. Richmond contends the trial court lacked personal jurisdiction over him because service on the secretary was defective as a matter of law. He challenges personal jurisdiction on two grounds: (1) Diamond failed to exercise due diligence as required under the statute to attempt personal service at all known addresses and further failed to send the required documents to his last known address because the California address was not a "last known address" and (2) the affidavit of compliance was deficient because it failed to state that two copies of the summons or process were delivered to the secretary of state and failed to indicate the amount of the fee Diamond paid.[8]

Due Diligence

While failure to strictly comply with any of RCW 46.64.040's requirements divests the court of personal jurisdiction over a defendant, the dispositive question here is

---

[8] Diamond does not contend she effected service of process on Richmond by any method other than substitute service on the secretary of state under RCW 46.64.040.

whether Diamond exercised due diligence to locate Richmond's addresses and attempt personal service of the summons or process at all those addresses and, finally, to send by registered mail to the last known address the mandatory documents specified in the statute before the 90-day tolling period expired. Richmond contends that Diamond

> failed to exercise due diligence to identify Mr. Richmond's addresses and to attempt personal service of the summons or process at all those addresses, and failed to send him at all those addresses by registered mail the notice of service on the Secretary, the summons or process, the affidavit of compliance, and the affidavit of due diligence.

Br. of Pet'r at 19.

Due diligence is required prior to service under the nonresident motorist statute. Meier, 111 Wn.2d at 481. We focus on what reasonable steps the plaintiff took in light of what he or she knew, not on what other steps were possible. Carras v. Johnson, 77 Wn. App. 588, 593, 892 P.2d 780 (1995). Due diligence requires that the plaintiff make "honest and reasonable efforts to locate the defendant," but it does not require the plaintiff to use "all conceivable means" to find him or her. Meier, 111 Wn.2d at 482. Nevertheless, a plaintiff must follow up on information that might reasonably assist him or her in finding the defendant. For example, if an accident report is made, it must be examined and the information therein investigated. Meier, 111 Wn.2d at 482. Further, "[r]easonable diligence requires contacting known third parties who may have knowledge of the defendant's whereabouts." Pascua, 126 Wn. App. at 529 (despite the fact that plaintiff had the contact information of an individual who likely knew the defendants' addresses, plaintiff failed to seek the addresses before applying for service by publication; court concluded plaintiff failed to make the honest and reasonable efforts required for such service).

-11-

Although due diligence is normally a fact question reserved for the trier of fact, if the factual issues are undisputed, the question is one of law for the court. Carras, 77 Wn. App. at 593; Martin v. Triol, 121 Wn.2d 135, 151, 847 P.2d 471 (1993). Here, the facts are undisputed. We thus determine whether the undisputed facts justify the conclusion of due diligence as a matter of law. Several Washington cases control.

In Meier, the plaintiff attempted to serve the defendant at a Washington address listed on the accident report, but "[u]nknown to plaintiff, that address was, in fact, defendant's parents' address." Meier, 111 Wn.2d at 473. Affidavits supporting plaintiff's motion for substitute service under RCW 46.64.040 established that plaintiff's attorney asked defendant's former neighbors and his former university about his whereabouts. Meier, 111 Wn.2d at 474-75. Neighbors told the attorney that defendant had moved to California. Meier, 111 Wn.2d at 474-75. Affidavits also established that plaintiff's process server checked with the police department, questioned neighbors, and checked the King County directory in an attempt to locate defendant, but found no listing in telephone and police records. Meier, 111 Wn.2d at 475. The court found that Meier's efforts constituted due diligence. Meier, 111 Wn.2d at 482-83. Accordingly, the court found service under the nonresident motorist statute appropriate. Meier, 111 Wn.2d at 483. Importantly, the court noted, "Nothing in the record suggests that plaintiff had other information available which should have been investigated with reasonable effort." Meier, 111 Wn.2d at 483 (emphasis added).

In Triol, the court addressed whether plaintiffs acted in good faith and exercised due diligence in attempting to personally serve defendants before resorting to substituted service under RCW 46.64.040. Triol, 121 Wn.2d at 150. There, plaintiffs

69400-6-I/13

began a series of personal service attempts five days before the service of process period expired. Triol, 121 Wn.2d at 150. The plaintiffs' process server located the defendants' Seattle residence, but could not locate the defendants.[9] Triol, 121 Wn.2d at 150. Neighbors provided no information on the defendants' whereabouts. Triol, 121 Wn.2d at 150. The plaintiff accordingly served the secretary of state under RCW 46.64.040. Triol, 121 Wn.2d at 150. Our Supreme Court concluded that the statute applied based on defendants' temporary absence from the state while on vacation. It further concluded plaintiff exercised due diligence in searching for them: "[Plaintiffs'] inability to personally serve [defendants] was not because of a lack of diligence, but was because the [defendants] were away from home on a boat sailing into Canadian waters." Triol, 121 Wn.2d at 150.

In Carras, the plaintiff's efforts, which consisted of hiring a professional process server and relying on the accident report for defendants' addresses in the absence of other information, "while certainly not exhaustive, were both honest and reasonable," and satisfied the statute. Carras, 77 Wn. App. at 594.

Cases analyzing due diligence in the context of service by publication under RCW 4.28.100 are also persuasive.[10] In Parkash v. Perry, 40 Wn. App. 849, 700 P.2d

---

[9] While RCW 46.64.040 originally applied only to nonresident motorists, the statute applies to Washington residents who are involved in a motor vehicle accident and thereafter leave the state. Meier, 111 Wn.2d at 476.

[10] Washington courts have applied case authority describing due diligence in the service by publication context to the nonresident motorist statute context, and vice versa. Meier, 111 Wn.2d at 481-82 (using due diligence analysis from publication context when describing plaintiff's duty under nonresident motorist statute); Pascua, 126 Wn. App. at 529 (using due diligence analysis from nonresident motorist case when

1201 (1985), Parkash filed a complaint against Perry for personal injuries suffered in Kennewick, Washington. Parkash, 40 Wn. App. at 850. Parkash's process server stated in his return of service that he was unable to find Perry after due and diligent search and inquiry. Parkash, 40 Wn. App. at 850. The return of service also contained the process server's note indicating he questioned a neighbor who thought Perry "'had moved to somewhere in the vicinity [sic] of 4th and Olympia in Kennewick.'" Parkash, 40 Wn. App. at 850 (alteration in original). The court authorized service by publication under RCW 4.28.100 based on Parkash's attorney's affidavit stating that Perry was not a resident of the state and after due diligence could not be found within the state. Parkash, 40 Wn. App. at 850-51. "Due diligence, as stated in the affidavit, consisted of a search of the telephone information listing for the Tri-Cities and the not found return of the process server." Parkash, 40 Wn. App. at 851.

Perry moved to dismiss for lack of jurisdiction based on improper service of process. Parkash, 40 Wn. App. at 851. She submitted an affidavit stating:

> [A]t the time of the accident, she resided at 1101 East Seventh Avenue in Kennewick; her driver's license listed her parents' Kennewick address; several months after the accident she moved to her parents' home and lived with them until she was married on November 14, 1981; and after her marriage she moved to an apartment at 200 South Union in Kennewick where she presently resides. Miss Perry further stated she had been employed as a hairdresser at Pacesetters in Kennewick from 1974 until August 1982 when she became employed by Images in Kennewick; also her parents' address was on her bank checking account. Finally, Miss Perry stated that no one representing Mr. Parkash had ever attempted to contact her either at home or at her place of work nor had she ever received any correspondence from Mr. Parkash, his attorney or anyone else representing him.

---

describing plaintiff's duty under service by publication statute). The standard for due diligence is identical for these two statutes.

-14-

Parkash, 40 Wn. App. at 851-52.  Perry alleged that Parkash's attorney's affidavit was

fatally deficient under RCW 4.28.100 for failing to state that (1) Perry departed from the

state with intent to avoid service of a summons or kept herself concealed with the same

intent and (2) a copy of the summons and complaint had been mailed to her at her

place of residence as required by statute.  Parkash, 40 Wn. App. at 852.

Parkash's attorney moved to amend his original affidavit to add that Perry's

insurance adjuster informed him that Perry may have left the state and that Perry had

departed the state or kept herself concealed to avoid service of summons.  Parkash, 40

Wn. App. at 852.  The trial court denied his motion and dismissed Parkash's complaint.

Parkash, 40 Wn. App. at 852.  Division Two of this court affirmed on several grounds

relevant to the present case:

> Here, the affidavit on which the court authorized service by publication did not
> comply with RCW 4.28.100.  Mr. Parkash's attempt to amend the affidavit nunc
> pro tunc must fail because the record at the time of the proposed amendment
> shows Miss Perry resided in Kennewick and at no time sought to conceal her
> residence.  Consequently, the motion was properly denied.  The original affidavit
> being defective, the service by publication was likewise defective.
> Mr. Parkash's contention Miss Perry is estopped from asserting the statute
> of limitation because of the misleading statements of the insurance adjuster
> likewise is rejected.  Mr. Parkash's affidavit quotes the adjuster as saying Miss
> Perry "may" have departed the state.  This statement was only an indication the
> adjuster did not know the whereabouts of Miss Perry.  Consequently, Mr.
> Parkash's reliance on the adjuster's statement, was misplaced.
> Moreover, the affidavits in the record raise a question concerning the
> diligence with which the process server and Mr. Parkash sought to locate Miss
> Perry.  None of the affidavits indicate the accident report was checked by the
> process server or Mr. Parkash.  The report disclosed where Miss Perry was
> working at the time of the accident and inquiry there may have shown her current
> employment.  The affidavits do not show an effort was made to contact any
> hairdressing establishment in Kennewick to locate Miss Perry—yet the accident
> report shows she was a hairdresser at Pacesetters in Kennewick.  Nor is there
> any showing the neighbor's statement Miss Perry had moved to the vicinity of
> Fourth and Olympia streets, appended as a note to the return of service, was
> investigated.  A mere search of the telephone listings and an attempt to serve

>   Miss Perry at her old residence, in light of the facts revealed by this record, is an inadequate showing of due diligence to support service by publication in any event; dismissal was proper.

Parkash, 40 Wn. App. at 853-54 (emphasis added).

In Pascua, before serving the defendant by publication under RCW 4.28.100, the plaintiff attempted to locate the defendant via the telephone number and address listed in the police report, contacted the apartment manager at that address, and conducted searches using a public records index, a phone directory, and Internet search engines. Pascua, 126 Wn. App. at 529. Despite these efforts, Division Two of this court concluded the plaintiff failed to exercise due diligence in locating the defendant:

>   While these efforts might generally be considered sufficient, they are not here. What [plaintiff] did not do was attempt to locate [defendant] through contacting Charles, the registered owner of the vehicle [defendant] was driving at the time of the accident. Charles's contact information was in the police report. While "[n]ot all conceivable means need be employed, . . . the accident report, if made, must be examined and the information therein investigated with reasonable effort." Reasonable diligence requires contacting known third parties who may have knowledge of the defendant's whereabouts. . . . Once [plaintiff's] other efforts were unsuccessful, it was unreasonable not to contact Charles to see whether he knew and would provide [defendant's] current location . . . .

Pascua, 126 Wn. App. at 529-30 (emphasis added) (internal citations omitted).

In Boes v. Bisiar, 122 Wn. App. 569, 94 P.3d 975 (2004), the plaintiff unsuccessfully attempted service through a process server at the address listed for the defendant on the accident report. Boes, 122 Wn. App. at 572. Plaintiff's attorney then checked telephone directories, did an internet search, and hired a private investigator to check police, utility, and voting records, all to no avail. Boes, 122 Wn. App. at 572. Plaintiff's attorney also attempted service at the home of defendant's distant relative and at the address listed on the registration for the vehicle the defendant was driving at the

time of the accident. Boes, 122 Wn. App. at 572-73. Defendant argued that plaintiff's failure to follow up on information known to her (namely her failure to check the county tax rolls) showed lack of due diligence. Boes, 122 Wn. App. at 575-76. Division Three of this court held, "'[A] mere search of the telephone listings and an attempt to serve Miss Perry at her old residence, in light of the facts revealed by this record' was insufficient to show due diligence." Boes, 122 Wn. App. at 575 (quoting Perry, 40 Wn. App. at 853-54). Boes distinguished Perry. It explained that the plaintiff in Perry failed to follow up on information in the accident report and a tip from a former neighbor, whereas in Boes, the plaintiff "used all information reasonably available to her" and "exhausted reasonable leads and repeatedly attempted to serve [defendant]." Boes, 122 Wn. App. at 575, 576.

As the case authority discussed above shows, "[a] bare recitation of the statutory factors required to obtain jurisdiction is insufficient; the plaintiff must produce the specific facts which support the conclusions required by the statute." Pascua, 126 Wn. App. at 527. See also Pascua, 126 Wn. App. at 527 (affidavits stating that plaintiff had "'attempted a diligent search'" and that defendants had "'intentionally conceal[ed] themselves to avoid service'" were insufficient to authorize service by publication and mail); Dobbins v. Mendoza, 88 Wn. App. 862, 872-74, 947 P.2d 1229 (1997) (alteration in original) (affidavit submitted to support service by publication under RCW 4.28.100 was inadequate to show due diligence when it merely stated the attorney made "diligent inquiry" as to the defendants' whereabouts but did not set forth facts showing a reasonably diligent search; supplemental affidavit failed to cure the defect where it

stated the attorney "initiated" calls to various government officials but did not specify who made the call or who was contacted).

The record evidence amply demonstrates that Diamond failed to exercise the due diligence required by the statute to locate Richmond and all of his addresses.[11] The undisputed evidence summarized above undermines Diamond's sole reliance on the California address listed in the accident report. Both Diamond and her attorney admitted they either knew he did not live there or could not confirm he ever lived there. Attorney Anderson's affidavit of attempted service states he was "unable with due diligence to serve personal process on [Richmond]." It further states that Anderson "researched internet telephone directories," "conducted online search using the Accurint legal databases," and "contacted the Department of Homeland Security." As in Dobbins and Pascua, these statements lack any specific facts to support a due diligence conclusion. Richmond argued these deficiencies to the trial court: "Ms. Diamond's counsel does not say what information he obtained from the unnamed internet telephone directories, Accurint and the Department of Homeland Security."

Anderson also fails to explain what "initial research" led him to conclude that Richmond "may have provided a falsified address and other contact information . . . ." Indeed, nothing in the record supports this bare statement. A defendant has no legal duty to assist in service of process. Pascua, 126 Wn. App. at 532 ("Far from an obligation to assist service of process, this court has held that a defendant[']s only duty

---

[11] A plaintiff relying on the nonresident motorist statute's substitute service procedures must prove by affidavit that the attorney with due diligence attempted to personally serve process on the defendant at "all addresses known to him or her of defendant . . . ." RCW 46.64.040 (emphasis added). This requirement includes the "last known" address.

is to accept service when validly tendered and not to evade service."); Thayer v. Edmonds, 8 Wn. App. 36, 41, 503 P.2d 1110 (1972) (same). No record evidence indicates Richmond's travel constitutes intentional concealment to avoid service of process.[12]

"[I]f plaintiff has information available pertaining to defendant's whereabouts other than that contained in the accident report, plaintiff must make reasonable efforts to investigate based on that information as well." Meier, 111 Wn.2d at 482. Abundant record evidence indicates Diamond and her attorney failed to pursue several reasonable and obvious leads. For example, after attorney Anderson spoke to Richmond by telephone on October 5, 2011, he knew or should have known the places where Richmond had resided—Mauritius, Bangladesh, and Vietnam—as well as Richmond's Massachusetts telephone number. Instead of attempting to locate him in any of those places, Anderson immediately served the secretary of state. Anderson also failed to contact Richmond's passenger—whose address and telephone number were listed on the accident report—to ask whether he knew Richmond's address. Nor is there any evidence to indicate Anderson contacted Richmond's friends living at the California address where Diamond attempted service to determine whether they knew Richmond's current address. The record shows no efforts made to contact Progressive, Fox Rent-A-Car, or SeaTac Municipal Court for information on Richmond's addresses. And Diamond conducted no Internet search for readily available contact information on

---

[12] Diamond contends Richmond received actual notice of the lawsuit and all due process considerations have been met because he was not prejudiced by improper service. But as Richmond correctly argues, learning about the suit does not subject him to personal jurisdiction.

Richmond. "Reasonable diligence requires contacting known third parties who may have knowledge of the defendant's whereabouts." Pascua, 126 Wn. App at 529.

As to the California address, the record shows Diamond directed personal service and mail solely there even though she knew—because Richmond told her at least twice—that Richmond did not live there.[13] Richmond also provided Diamond information that would have readily lead Diamond to locate his addresses in Mauritius and Bangladesh within the limitations period. The record also shows he lived in Mauritius within the limitations period and lived in Bangladesh within the limitations period and when the lawsuit commenced. We conclude Diamond failed to exercise due diligence to discover Richmond's addresses.

## CONCLUSION[14]

For the reasons discussed above, we conclude that Diamond's attempted substitute service under the nonresident motorist statute, RCW 46.64.040, fails for lack of due diligence premised on undisputed facts indicating (1) no exercise of due diligence in locating Richmond's addresses, (2) no personal service attempts at those addresses, and (3) reliance solely on the California address as Richmond's "last known address" for mailing by registered mail the notice of service on the secretary, the

---

[13] As noted above, attorney Anderson acknowledged that he "could not confirm that a Jonathan Richmond ever used" the California address listed on the accident report.

[14] Given our lack of due diligence resolution, we need not address Richmond's remaining contentions. We question but do not address whether Diamond strictly complied with every procedural requirement of the statute.

69400-6-I/21

summons or process, and the affidavits of compliance and due diligence.[15] The due

diligence standard imposed by the substitute service statute requires a plaintiff such as

Diamond to exercise efforts beyond a mere perfunctory search to locate the defendant.

We reverse with instructions to dismiss this lawsuit with prejudice for lack of personal

jurisdiction.

WE CONCUR:

---

[15] It is questionable under the circumstances here whether the California address is Richmond's "last known address."

-21-